651 P.2d 862

STATE of Arizona, ex rel. Suzanne DANDOY, M.D., M.P.H., Director of the Department of Health Services, Plaintiff-Appellee,

v.

CITY OF PHOENIX, Arizona, Defendant-Appellant.

No. 1 CA–CIV 5958.

Court of Appeals of Arizona, Division 1, Department A.

June 8, 1982.

Rehearing Denied Aug. 26, 1982.

Review Denied Sept. 28, 1982.

Robert K. Corbin, Atty. Gen. by H. Charles Pyeatte, David S. Baron and James C. Hair, Jr., Asst. Attys. Gen., Phoenix, for plaintiff-appellee.

Snell & Wilmer by John J. Bouma and Vaughn A. Crawford, Phoenix, for defendant-appellant.

## OPINION

HAIRE, Judge.

On this appeal the appellant City of Phoenix (City) contends that the trial court erred in enjoining the violation by the City of certain provisions of a cease-and-desist order previously entered by the appellee Arizona Department of Health Services (Department). In its arguments presented to this court the City does not deny that it has violated the provisions of the order, nor does it attack the authority of the trial court to enforce a valid Department cease-and-desist order through the injunctive process. *See* A.R.S. § 36–601(C). Rather,

the thrust of the City's attack on appeal is that the cease-and-desist order entered by the Department was void, and that therefore it could not provide a legal basis for the subsequent utilization of the trial court's injunctive process.

Procedurally, this case began with an administrative cease-and-desist order issued by the Department pursuant to its claimed regulatory authority over sanitary landfill operations. The cease-and-desist order cited four alleged deficiencies in the operation of certain sanitary landfills owned or operated by the City, and directed the City to take designated particularized steps to comply with the order.

The City requested an administrative hearing pursuant to A.R.S. § 36–601(B) to determine the reasonableness of the Department's order. After the hearing was concluded, but before a decision was rendered by the administrative hearing officer, the city attorney agreed to the entry of a consent order by the Department. This consent order was entered on June 21, 1979, and was later superseded by an amended consent order entered December 27, 1979, likewise based on the consent of the city attorney.

Some seven months later, on August 1, 1980, the Department filed its complaint in the superior court seeking to enjoin the City's alleged violations of the amended consent order. After a three day evidentiary hearing, the trial court granted the injunctive relief sought by the Department. This appeal has been taken from the issuance of that injunction.

 It is important to note that after the entry of the amended consent order the City did not seek judicial review as authorized by the Administrative Review Act (A.R.S. § 12–901, et seq.). Therefore, the amended consent order became final and not subject to judicial review. See A.R.S. § 12–902(B). However, as expressly provided in A.R.S. § 12–902(B), an exception to this statutorily declared finality exists for the purpose of questioning the jurisdiction of the administrative agency over the persons or subject matter involved in the controversy. This statutory exception is in accord with Arizona case law applying res judicata principles to administrative agency proceedings. See Tucson Rapid Transit Company v. Old Pueblo Transit Company, 79 Ariz. 327, 289 P.2d 406 (1955); Tucson Warehouse & Transfer Co. v. Al's Transfer, 77 Ariz. 323, 271 P.2d 477 (1954); Pacific Greyhound Lines v. Sun Valley Bus Lines, 70 Ariz. 65, 216 P.2d 404 (1950).

The City does not base its argument that the amended consent order was void for lack of jurisdiction upon any claimed lack of jurisdiction over the City as a party to the administrative proceedings. Rather, its contention that the amended consent order is void and unenforceable is based primarily upon arguments concerning the administrative agency's alleged lack of subject matter jurisdiction. In this regard, the City recognizes that A.R.S. § 36–601(A)(17) furnishes a foundation upon which the Department might proceed to regulate and control sanitary landfill activities. The City further recognizes that the conditions specified to be public nuisances under A.R.S. § 36–601(A) may be abated by the Department through the issuance of cease-and-desist orders, and that such a cease-and-desist order may ultimately be enforced by superior court injunction. See A.R.S. § 36–601(B) and (C). A.R.S. § 36–601(A)(17), concerning sanitary landfills, provides as follows:

"A. The following conditions are specifically declared public nuisances dangerous to the public health:

\* \* \* \* \* \*

"17. The storage, collection, transportation, disposal and reclamation of garbage, trash, rubbish, manure and other objectionable wastes *other than as provided and authorized by law and regulation.*"

(Emphasis added).

Relying upon the emphasized language, the City urges that A.R.S. § 36–601(A)(17) does not furnish a valid basis for the amended consent order entered by the Department in this case because the statute has not been implemented by the promulgation of regu-

lations governing a substantial part of the activities which the Department sought to abate by affirmative injunction. The City's argument finds support in A.R.S. § 36–136(G)(11), which in mandatory terms requires that the Department adopt regulations governing sanitary landfill operations.[1] The essence of the City's contention is that in this case the Department has disregarded statutory requirements that it initially exercise its authority by the promulgation of regulations having general applicability, and instead is attempting to regulate sanitary landfill operations through *ad hoc* orders arbitrarily entered, depriving the City of the benefit of any predetermined standards against which its challenged activities might be measured and adjudicated.

■ In *Arizona Corporation Commission v. Palm Springs Utility Co., Inc.*, 24 Ariz. App. 124, 536 P.2d 245 (1975), this court thoroughly discussed and approved the general principle of administrative law that the promulgation of rules and regulations of general applicability is to be favored over the generation of policy in a piecemeal fashion through individual adjudicatory orders on an *ad hoc* basis. The policy considerations discussed in that case are equally applicable here, and need not be further discussed. When such general policy considerations are combined with the City's well-reasoned statutory analysis and other cited authorities, we would have difficulty in concluding that the Department did not commit legal error in attempting to proceed by cease-and-desist order as to a substantial part of the relief sought in this case, in the absence of prior promulgation and adoption of regulations providing more detailed standards for the control of sanitary landfill activities. However, since the City's attack on the amended consent order is collateral and not on direct review, mere *legal error* is not sufficient to justify setting aside the amended consent order entered by the Department in this case. Rather, there must be a showing that the failure to promulgate regulations goes to the subject matter jurisdiction of the Department. As we have previously indicated, under A.R.S. § 12–902(B) the failure to seek review of an administrative agency decision within the time and in the manner provided by the Administrative Review Act results in the decision becoming final and not subject to subsequent judicial review for mere legal error or factual insufficiency.

Based upon our review of the record in this matter, we are not persuaded that the City's attempt to circumvent finality in this case by an attack on the subject matter jurisdiction of the Department is sound. Here, the statutes grant broad authority to the Department in the area in question, and the interpretation of those statutes is subject to legitimate dispute. Thus, the Department not only disputes the City's interpretation of A.R.S. § 36–601(A)(17), but affirmatively relies on the provisions of § 36–601(A)(4), (5) and (9) as constituting authority for various provisions of its cease-and-desist order.[2] In addition, the Depart-

---

1. A.R.S. § 36–136(G)(11) provides:

"G. The director shall, by regulation:

\* \* \* \* \* \*

"11. Define and prescribe reasonably necessary measures regarding storage, collection, transportation, disposal and reclamation of garbage, trash, rubbish, manure and objectionable wastes. The regulations shall prescribe minimum standards for storage, collection, transportation, disposal and reclamation of such wastes and shall provide for inspection of premises, containers, processes, equipment and vehicles, and for abatement as public nuisances of any premises, containers, processes, equipment or vehicles which do not comply with the minimum standards."

2. A.R.S. § 36–601(A)(4), (5) and (9) provides:

"A. The following conditions are specifically declared public nuisances dangerous to the public health:

\* \* \* \* \* \*

"4. Any place, condition or building controlled or operated by any governmental agency, state or local, which is not maintained in a sanitary condition.

"5. All sewage, human excreta, waste water, garbage or other organic wastes deposited, stored, discharged or exposed so as to be a potential instrument or medium in the transmission of disease to or between any person or persons.

\* \* \* \* \* \*

"9. The pollution or contamination of any domestic waters."

ment points out that it has enacted regulations which to some extent regulate sanitary landfill operations, and urges that these regulations furnish support for its cease-and-desist order.[3] Finally, relying upon a 1958 Arizona Attorney General's opinion, the Department contends that A.R.S. § 36–601(B) authorizes it to proceed by cease-and-desist order against nuisances other than those specifically listed in the seventeen subdivisions of A.R.S. § 36–601(A), and that the conditions challenged by its cease-and-desist order relative to the City's sanitary landfill operations fall within the classic concepts of public health nuisances. *See* Arizona Attorney General's Opinion No. 58–67 (1958).

■ We cite these contentions urged by the Department, not as an indication or acknowledgment that the Department is correct in its legal interpretation of the statutes and the regulations in question. Indeed, as we have previously indicated in this opinion, we have serious concerns in that regard. An erroneous interpretation and application of a statutory provision, however, will normally constitute mere legal error and not operate to deprive an administrative agency of jurisdiction. The point is well made in *Arizona Public Service Co. v. Southern Union Gas Co.,* 76 Ariz. 373, 265 P.2d 435 (1954) wherein the court stated:

> "Whether the commission misinterpreted the statute it is unnecessary for us to say. Suffice it to say that the commission had jurisdiction over the subject matter (whether Southern should receive from it a certificate of convenience and necessity), and in the exercise of that jurisdiction the commission had the power and authority to try the issue as to whether Southern was qualified to receive such certificate. * * * If a court has the power to try an issue and make a decision

thereon, such decision cannot be collaterally attacked for error of law, whether that error be one of misconstruction of a statute or other legal error."

76 Ariz. at 380, 265 P.2d at 440.

■ Here, we view the regulatory issue raised by the City as pertaining to how the statutory jurisdiction given to the Department must be exercised, as opposed to the existence of that jurisdiction. As such, in our opinion, the issue does not relate to subject matter jurisdiction so as to make absolutely void and subject to collateral attack orders entered by the Department. Rather, the alleged failure of the Department to exercise its authority in the proper manner constitutes at the most mere legal error, and, as we have indicated, where an administrative agency has jurisdiction over both the parties and the subject matter, the validity of a final order affected by mere legal error is not subject to attack in a later proceeding for the enforcement of that final order.[4]

The City's reliance on *State v. Downey,* 102 Ariz. 360, 430 P.2d 122 (1967) is misplaced. Although there the court allowed a subsequent attack on the validity of an order of the Board of Supervisors incorporating the Town of Paradise Valley, the court emphasized that the proceeding (*quo warranto*) constituted a direct, not a collateral attack on the prior order. Also, the Board of Supervisor proceedings attacked in *Downey* did not involve true administrative agency adjudicatory proceedings such as were involved before the Department in this case. It is true that in *State ex rel. Bradway v. De Mattos,* 88 Wash. 35, 152 P. 721 (1915), also relied upon by the City, the court permitted a collateral attack against a prior consent judgment previously entered against the municipality involved. The basis of the attack, however, was the alleged

---

**3.** See A.C.R.R. R9–8–431(A) and R9–8–432.

**4.** The City's consent to the provisions of the Department's order would have precluded the raising of mere legal error even if there had been a timely direct appeal from the amended consent order. *See Cofield v. Sanders,* 9 Ariz. App. 240, 451 P.2d 320 (1969). However, the

mere fact of consent would not preclude a direct appeal or subsequent attack based on the Department's lack of subject matter jurisdiction. *See Industrial Park Corporation v. U.S. I.F. Palo Verde Corporation,* 19 Ariz.App. 342, 507 P.2d 681 (1973); *Cofield v. Sanders, supra.*

fraud of the city officials in consenting to the prior judgment. Fraud of that nature has always been recognized as a valid exception to *res judicata* principles, *see Cofield v. Sanders,* 9 Ariz.App. 240, 451 P.2d 320 (1969), and it is important to note that no such fraud has been alleged or shown here. We have made no attempt to discuss all of the cases cited by the parties. Some of them involve the allowance of collateral attacks on final judgments based upon true lack of subject matter jurisdiction. We note, however, considerable confusion in this area of the law based upon the often imprecise use by the courts of the words "void" and "jurisdiction", generally occurring on direct appeal in situations involving mere legal error rather than true lack of jurisdiction. As recognized long ago by Chief Justice Lockwood in *Collins v. Superior Court,* 48 Ariz. 381, 62 P.2d 131 (1936), discussing this semantical problem:

> "... appellate courts sometimes fail to realize that the exact meaning of their language, reaching a correct result when limited in its effect to the precise case before them, leads to an improper conclusion when applied to another and entirely different state of affairs. There are many cases in the reports where courts have used the word 'void,' where a close analysis of the facts shows that 'voidable' is what is really meant, and there have been instances where appellate tribunals have used the word 'jurisdiction' when, in reality, they meant, not the *power* to perform a certain act, but the *performing of it when it was prohibited,* a very different thing."

(Emphasis in original). 48 Ariz. at 392–93, 62 P.2d at 137; *accord, Cockerham v. Zikratch,* 127 Ariz. 230, 619 P.2d 739 (1980); *see Arizona Public Service Co. v. Southern Union Gas Co., supra.*

■ In summary on this issue, although the Department's order may have involved legal error, we find that the Department did not lack subject matter jurisdiction.

We next address the City's contention that the amended consent order was void because the city attorney allegedly lacked authority to consent to its entry. This contention by the City was not raised in the trial court, and was first urged in the City's opening brief in this appeal. An affidavit of the city attorney is included in the appendix to the City's opening brief, and purports to establish the factual basis for the contention. Briefly, the City urges that although the city council informally discussed and approved the original consent order and the amended consent order during two informal council sessions, neither of these orders were ever approved in formal sessions as required by the City's charter.

■ We have previously granted the Department's motion to strike the city attorney's affidavit from the City's opening brief upon the basis that review on appeal must be limited to the factual record as presented in the superior court. *See Patton v. Paradise Hills Shopping Center, Inc.,* 4 Ariz.App. 11, 417 P.2d 382 (1966). The record is thus devoid of any factual basis for an attack on the city attorney's authority to agree to the entry of the consent orders. Separate and apart from the lack of a factual basis, however, the Department urges, and we agree, that the attack by the City on the authority of its agent raised for the first time on appeal simply comes too late. First, under Rule 8(d), Rules of Civil Procedure, 16 A.R.S., the lack of authority of an agent to enter into an agreement is an affirmative defense which must be pleaded and proved by the defendant. *City of Phoenix v. Linsenmeyer,* 86 Ariz. 328, 346 P.2d 140 (1959); *Branding Iron Club v. Riggs,* 207 F.2d 720 (10th Cir. 1953); 2A Moore's Federal Practice ¶ 8.27[4], n.3 at 8–264 (2d ed. 1982). Second, and more fundamental, this issue was never urged in the trial court and thus cannot be considered on appeal. *Sanitary District No. 1 of Pima County v. State,* 1 Ariz.App. 45, 399 P.2d 179 (1965); *see Ruck Corporation v. Woudenberg,* 125 Ariz. 519, 611 P.2d 106 (App. 1980); *Cofield v. Sanders, supra.*

A review of the record and pleadings in the trial court reveals that although the defendant City generally denied all of the Department's allegations concerning the ex-

ıstence and entry of the original consent order and the amended consent order, it acknowledged in various of its affirmative defenses the existence and entry of the consent orders. Subsequently, the City's motion to dismiss the Department's complaint impliedly acknowledged that the City had consented to the orders, and in oral argument on that motion, the city attorney affirmatively recognized that the City had consented to the orders. Finally, in his findings of fact the trial judge expressly found that "the parties entered into" the initial consent order and that "the parties subsequently agreed to modify the consent order and entered into an amended consent order . . . ." Although the City filed objections to numerous other provisions of the proposed findings and conclusions, no objections were ever filed to these findings relating to consent and agreement by the City. We therefore hold that under these circumstances the City's failure to object to the findings of consent standing alone precludes appellate review of this issue, even if the City had appropriately raised the consent issue by pleading an affirmative defense.

For the reasons set forth in this opinion, we conclude that the trial judge did not commit error in entering an injunction for the purpose of enforcing the terms of the amended consent order. We also reject the City's contention that it did not properly consent to the entry of the amended consent order. Since no other issues have been raised by the City, the judgment entered by the trial court is affirmed.

CONTRERAS, Acting P. J., and CORCORAN, J., concur.