708 P.2d 764
**Paul Leonard OLIVER,**
**Plaintiff-Appellant,**

v.

**The ARIZONA DEPARTMENT OF RACING; John K. Goodman, Ray Shaffer, Tad Pfister, Fred Struckmeyer, Jr., Commissioners; Timothy A. Barrow, Director; Clyde Allred, Don Skov, and Bob Bird, Racing Stewards, Defendants-Appellees.**

**1 CA–CIV 7864.**

Court of Appeals of Arizona,
Division 1, Department C.

May 28, 1985.

Review Denied Oct. 16, 1985.

**84**

Hiner, Crowe & Scott, P.A. by Michael B. Scott, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Evelyn R. Epstein and Charles Pierson, Asst. Attys. Gen., Phoenix, for defendants-appellees.

## OPINION

CONTRERAS, Judge.

Appellant (Oliver) appeals the dismissal of a complaint seeking review of a license revocation by the Arizona Department of Racing (Department). The trial court dismissed the complaint for failure to exhaust administrative remedies. The issues on appeal are whether Oliver was required to file a motion for rehearing with the Arizona Racing Commission after the Commission affirmed the decision of the Department and whether the Department exceeded its jurisdiction when it revoked his li-

cense. We conclude that Oliver failed to exhaust the administrative remedies provided by A.C.R.R. R4–27–124(F) and that the complaint was properly dismissed. Additionally, we conclude that the Department did not exceed its authority.

Oliver held an owner's/trainer's license issued by the Arizona Department of Racing which authorized him to enter horses in races at Turf Paradise racetrack. During December 1982 and January 1983, the racing stewards, on-site officials at the racetrack, cited Oliver for alleged violations of Arizona Racing Commission regulations regarding impermissible levels of foreign substances that were discovered in horse urine samples following races. The stewards held a hearing pursuant to A.C.R.R. R4–27–121(E) in July of 1983[1] and suspended Oliver's training license for 60 days, the maximum allowed under A.R.S. § 5–104(G) (Supp.1984). In addition, the stewards fined Oliver $500, disqualified the horses involved, redistributed the winnings of these horses and referred the matter to the Director of the Department for further action.

Oliver appealed the stewards' decision to the Department. The Department held an evidentiary hearing and found that Oliver violated A.C.R.R. R4–27–107(A) and R4–27–208(A)[2] by entering horses in races when he knew or should have known that prohibited drugs had been administered to those horses. The hearing officer recommended permanent revocation of Oliver's training license due to multiple violations of racing regulations. The Director of the Department adopted the recommendation of the hearing officer. Oliver filed a timely request for rehearing with the Director and the Director reduced the penalty, revoking his license for three years and requiring him to apply to the Commission for rein-

---

**1.** Oliver had obtained a stay to restrain the stewards from conducting the hearing. The stay was quashed in *Goodman v. Superior Court,* 136 Ariz. 201, 665 P.2d 83 (1983).

**2.** Oliver was charged with violations of the racing rules and regulations that became effective

March 25, 1980. The subsequent hearings by the Department and Commission were conducted pursuant to the revised rules and regulations that became effective August 5, 1983. *See infra* p. 766.

statement. Oliver sought superior court review of the Director's decision, but the trial court dismissed his complaint for failure to exhaust his administrative remedies. Oliver then appealed the Director's order to the Commission pursuant to A.C.R.R. R4–27–124(A). After hearing oral argument, the Commission affirmed the Director's decision. On April 4, 1984, Oliver filed a complaint in superior court seeking review of the Department order, alleging in part that the Commission's decision was erroneous because the penalty was not authorized by statute, was not supported by substantial evidence, and was based on invalid administrative rules. The trial court dismissed the complaint for failure to exhaust administrative remedies as set forth in A.C.R.R. R4–27–124(F).

On appeal, Oliver asserts the following:

1. An appeal to the Commission of a Racing Department order is not a "contested case before the Commission" as used in A.C.R.R. R4–27–124(F) regarding Commission rehearings and therefore he was neither entitled nor required to request a rehearing of the Commission's decision.

2. The exhaustion of remedies doctrine does not apply because the Department acted in excess of its jurisdiction by imposing a penalty not authorized by statute or agency rules.

3. Even if Oliver was a party to a contested case before the Commission, the Commission failed to provide the required notice and opportunity for an evidentiary hearing.

4. Further protraction of the Department's administrative procedures would be so arduous that it would constitute a deprivation of due process under the federal and state constitutions.

The state maintains that an appeal to the Commission is a contested case before the Commission so that a failure to request a rehearing constitutes a failure to exhaust administrative remedies under A.C.R.R. R4–27–124(F). The state further maintains that Oliver's asserted jurisdictional issue is actually an assertion of a legal error that should have been raised in a rehearing request. We agree with the state's position.

Analysis of the exhaustion of remedies issue requires a review of the statutory and regulatory structure of the Commission and the Department to determine the mandatory administrative remedies available to Oliver. Effective October 1, 1982, the Arizona Legislature created the Arizona Department of Racing and increased the power of the Arizona Racing Commission. The legislation was designed to strengthen regulation of the racing industry and to permit the Arizona Racing Commission to "concentrate their efforts on setting overall department policy, allocation of racing dates and licensing of permittees." Laws 1982, Ch. 310, § 1. The Commission promulgated new rules and regulations effective August 5, 1983, to implement the 1982 amendments to Title 5, A.R.S. These new regulations provide that the racing stewards' decisions may be appealed to the Department, which shall review the entire record before ruling. A.C.R.R. R4–27–123(A). Where the denial, suspension or revocation of a license is involved, the Director must give the applicant written notice and an opportunity for hearing. A.C.R.R. R4–27–123(B). All parties appearing before the Director in a "contested case" shall be afforded an opportunity to respond and present evidence and argument on all issues. A.C.R.R. R4–27–123(C). Under A.C.R.R. R4–27–123(G)(8), "contested case" shall be defined as provided in A.R.S. § 41–1001 (Supp.1984), which states:

[A]ny proceeding, including but not restricted to ratemaking, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing.

Any person aggrieved by a decision of the Director may request rehearing or review by the Director. A.C.R.R. R4–27–123(G). Persons aggrieved by the Director's ruling may appeal to the Commission, which shall review the record and conduct any other proceedings it deems appropriate. A.C.

R.R. R4–27–124(A). The Commission must provide all parties involved in permit denials, suspensions or revocations an opportunity for a hearing and to present evidence and argument on all issues. A.C.R.R. R4–27–124(B). Any party in a contested case before the Commission who is aggrieved by the Commission's decision may seek a rehearing or review. A.C.R.R. R4–27–124(F). Commission decisions are subject to judicial review. A.R.S. § 5–104(G).

Oliver makes a two-pronged argument in asserting that his was not a contested case and he therefore was not required to request a rehearing by the Commission. The first argument is that the case ceased to be "contested" when it moved from the Department to the Commission because the Commission afforded him only an opportunity for oral argument. Under A.R.S. § 41–1001(2), a contested case is one that requires an opportunity for a hearing. Oliver argues that A.R.S. § 41–1010(A)(1) (Supp.1984) requires that the hearing be in the nature of a trial, with parties having the right to counsel, to submit evidence at open hearings and to cross-examine witnesses. He contends that a discretionary hearing by the Commission, at which only oral argument is allowed, does not meet this standard. Additionally, Oliver notes that under A.C.R.R. R4–27–124(A), the Commission is required merely to review the record and conduct other proceedings it deems appropriate. Again, Oliver contends that this is not the type of hearing that is required for contested cases.

In response, the state asserts that Oliver misinterprets the meaning of "contested case" when he contends that the absence of testimony and exhibits transforms a contested case into a non-contested one. The state points to A.R.S. § 41–1001(2), which defines a contested case as "any proceeding ... in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." *See also, Cortaro Water Users' Association v. Steiner*, 1 CA–CIV 7513 (Ariz.App. April 16, 1985).

We agree with the state. The term "proceeding" is a very comprehensive one that means a prescribed course of action for enforcing legal rights. *Kennie v. City of Westbrook*, 254 A.2d 39 (Me.1969). The term may refer to a mere procedural step as well as to a complete remedy. *Rooney v. Vermont Investment Corp.*, 10 Cal.3d 351, 110 Cal.Rptr. 353, 515 P.2d 297 (1973). The history of the term "contested case" further supports this interpretation. The comment to the model state administrative procedures act explains that the term "contested case" is used instead of the term "adjudication" simply to prevent confusion in terminology with the Federal Administrative Procedures Act. *Model State Administrative Procedure Act* (U.L.A.) § 1 at 373 (1961). The federal Act defines adjudication as "an agency process for the formulation of an order." 5 U.S.C. § 551(7) (1946). As the state contends, the Commission proceeding was an agency process for the formulation of an agency order that would affect the Director's decision. Therefore, Oliver's insistence that his case no longer was contested because the Commission did not offer a de novo hearing is without merit. This is particularly true where, as here, the affected party has indicated in his notice of appeal that he had no additional evidence to submit to the Commission.

Having concluded that Oliver's case was and remained a "contested" case throughout the administrative process, it is clear that A.C.R.R. R4–27–124(F) afforded Oliver an opportunity to seek rehearing or review before the Commission. Where such review is provided by rule or statute, an aggrieved party must avail himself of it before seeking judicial review. *See Farmers Investment Co. v. Arizona State Land Department*, 136 Ariz. 369, 666 P.2d 469 (App.1983). The purpose of this exhaustion of remedies doctrine is twofold: to allow an administrative agency to exercise its expertise over the subject matter and perhaps more importantly, to permit the agency to correct any mistakes or errors that may have occurred during the administrative process. *United Farm Workers of*

*America, AFL–CIO v. Arizona Agricultural Employment Relations Board,* 669 F.2d 1249 (9th Cir.1982). The trial court therefore was correct in dismissing Oliver's complaint for failure to exhaust his administrative remedies.

The next issue is whether in revoking Oliver's license the Department exceeded its jurisdiction by imposing a penalty not authorized by statute or agency rules. Although the trial court did not reach this issue, jurisdictional questions may be considered at any stage of a proceeding. Oliver makes three arguments to support his assertion that the Department exceeded its jurisdiction. First, he contends that the penalties provided under A.C.R.R. R4–27–107(D), (P), (S) and (U) are limited to declaring a horse unplaced and ordering forfeiture of winnings, a fine and a 60-day suspension. In revoking his license, Oliver contends that the Department apparently implied the authority to revoke a license from its authority to issue a license, something it cannot do. Second, Oliver contends that Arizona statutes provide for license revocation only for a limited number of offenses. A.R.S. §§ 5–108.05, 5–115 (Supp. 1984). Oliver argues, however, that he was not accused of any violation of A.R.S. §§ 5–108.05 or 5–115. Consequently, he asserts that he was not properly subject to license revocation. Finally, Oliver contends that the Department improperly relied on past violations to enhance his punishment. Under A.R.S. § 5–108.05, enhanced punishment is authorized only for the violations of A.R.S. § 5–115 that require proof of a guilty mind. Oliver notes that he was not accused of violating A.R.S. § 5–115 and furthermore that the state argued that his state of mind and knowledge were irrelevant because he was accused of strict liability offenses.

■ The state asserts in response that the issue Oliver labels jurisdictional is in fact the assertion of a legal error that would be reviewable by a court only after appellant had exhausted his administrative remedies. We agree with the state. Jurisdiction relates solely to the competency of

a tribunal to determine the controversies of a particular type of case. *Rural/Metro Corp. v. Arizona Corporation Commission,* 129 Ariz. 116, 629 P.2d 83 (1981). Where jurisdiction lies to try an issue, the resulting decision "cannot be collaterally attacked for error of law, whether that error be one of misconstruction of a statute or other legal error." *State v. City of Phoenix,* 133 Ariz. 334, 338, 651 P.2d 862, 866 (App.1982) (quoting *Arizona Public Service Co. v. Southern Union Gas Co.,* 76 Ariz. 373, 265 P.2d 435 (1954)). Here, Oliver himself recognized that the error he alleges is a legal error. In his complaint seeking administrative review, he asserted that the administrative decision was "contrary to law and invalid in that (a) The penalty imposed is not authorized by statute nor by the Commission's rules and regulations. . . ." We therefore conclude that the issue of whether the Director imposed an excessive penalty cannot be raised here because it is an alleged legal error and Oliver did not exhaust his administrative remedies before seeking judicial review.

Oliver next argues that if appellant was a party to a contested case before the Commission, the trial court erred in failing to address the Commission's lack of jurisdiction due to its failure to comply with the procedural requirements of A.R.S. §§ 41–1009 (Supp.1984) and 41–1010. Under A.R.S. § 41–1009, a party to a contested case must be provided an opportunity for an evidentiary hearing and notice of that hearing. A.R.S. § 41–1010 provides for the subpoena of witnesses, the submission of evidence and cross-examination.

■ We reject Oliver's allegation of error, again because he failed to exhaust his administrative remedies. Under A.C.R.R. R4–27–124(F)(3)(a), any assertion of error involving "irregularity in the administrative proceedings of the . . . Commission" should be raised in a request for rehearing or review of the Commission's decision. Oliver raised this issue only after his complaint seeking judicial review was dismissed.

■ Oliver's final issue is that requiring a request for rehearing after the Commission issues a decision would make the administrative process so burdensome that it would deprive him of due process rights guaranteed by the federal and state constitutions. A fundamental principle of administrative law is that all available, mandatory administrative remedies be pursued before judicial intervention. *United Farm Workers, supra.* Again, the primary purpose of this exhaustion doctrine is to allow an administrative agency to correct any mistakes or errors it may have made, thus avoiding unnecessary or premature judicial intervention into the administrative process. *Id.* We conclude that the instant administrative process is not unduly burdensome and consequently find no deprivation of due process rights.

For the foregoing reasons, the trial court's judgment dismissing the complaint is affirmed.

BROOKS and EUBANK, JJ., concur.