803 P.2d 130

**John Raymond COLLINS, Plaintiff-Appellant,**

v.

**STATE of Arizona; the Arizona State Banking Department; Mary C. Short, Superintendent of Banks; and Harold J. Merkow, Hearing Officer, Arizona State Banking Department, Defendants-Appellees.**

**No. 1 CA-CV 89-311.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 24, 1990.

Tanner & Associates by Wallace O. Tanner, Scottsdale, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Victoria M. Gruver, Alisan M.B. Patten, Leesa Ber-

ens Morrison, Asst. Attys. Gen., Phoenix, for defendants-appellees.

## OPINION

CONTRERAS, Judge.

Appellant, an unlicensed consumer lender, appeals from the dismissal of his complaint challenging the jurisdiction of the superintendent of banks (the superintendent) over him in assessing penalties against him under the Consumer Loan Act, contained in A.R.S. § 6–601 *et seq.* The trial court dismissed appellant's complaint for failure to exhaust administrative remedies before seeking review with the trial court. The first issue on appeal is whether appellant's appeal to the trial court actually set forth a challenge to the superintendent's jurisdiction or whether it really contained only an assertion of legal error since, pursuant to A.R.S. § 12–902(B), a jurisdictional challenge may be judicially reviewed without first seeking administrative review, but an assertion of legal error may not be judicially reviewed without first seeking administrative review. The second issue on appeal is, if appellant has raised a jurisdictional challenge, whether the superintendent did in fact have jurisdiction over appellant to issue punitive orders against him. We conclude that appellant did raise a valid jurisdictional challenge, and that the superintendent did have jurisdiction over appellant to issue punitive orders against him. We therefore affirm the trial court's dismissal of appellant's complaint.

On appeal from a dismissal of a complaint, we consider the facts as alleged in the complaint as true. *Arizona Management Corporation v. Kallof,* 142 Ariz. 64, 65, 688 P.2d 710, 711 (App.1984). Accordingly, the facts alleged are as follows: Appellant was in the real estate investment business, and prior to November, 1986, he had occasionally made loans to family members or friends. In September, 1986, appellant decided to invest about $75,000.00 to $100,000.00 in something that would pay him an immediate return on his investment. He subsequently came up with a plan to lend small amounts of money to people who found it difficult to borrow money from regular lending institutions.

Because appellant did not know whether there were any laws controlling the making of such loans, he contacted his attorney and discussed the idea with him. Appellant asked his attorney about the maximum legal interest rate for these loans since he was considering lending small sums to high risk borrowers. The attorney advised appellant that the law permitted any interest rate to which the parties agreed in writing. The attorney also told appellant that he did not need a license to lend money, but he suggested that appellant contact the City of Phoenix to see if the City required a sales tax or other business license. Appellant then contacted the Business License Department of the City of Phoenix and was advised that the City did not require any tax, business or other license to lend money. Appellant made his first loan on November 29, 1986, and continued to make loans until May 17, 1987.

By letter dated May 28, 1987, the State Banking Department (the department) informed appellant that it had come to the attention of the department that he was in the business of lending money without a license. Appellant responded that he was unaware of any license requirement to lend money. He made no further loans.

Appellant and his attorney subsequently corresponded and met with banking department personnel to disclose the loan transactions appellant had entered into and to explain why he had not obtained a license. The department pursued the matter, and on July 29, 1988, the superintendent issued a cease and desist order directing appellant to cease and desist making or procuring consumer loans and soliciting or holding himself out as willing to make or procure consumer loans. The order also prohibited appellant from collecting or receiving any principal, interest and charges on consumer loans he had made and ordered that he refund all principal, interest and charges that he had previously collected on the loans, return all property held as collateral or taken in satisfaction or partial satisfac-

tion of any loan and provide information on the loans to the superintendent.

On August 24, 1988, appellant filed with the superintendent his response to the cease and desist order and a motion to quash the cease and desist order in part. In his response, appellant alleged that the superintendent did not have the power to issue punitive orders against him because the superintendent had no jurisdiction over appellant since appellant had not been licensed by the superintendent and appellant had not sought to avoid the application of A.R.S. Chapter 5, which contains the Consumer Loan Act, by device, subterfuge or pretense.

The superintendent issued a partial stay of the cease and desist order on September 2, 1988. The stay suspended the requirement that appellant refund what he had already collected on the loans, return any collateral, and provide information on the loans to the superintendent. However, the superintendent continued the cease and desist order. On September 29, 1988, the hearing officer appointed by the superintendent conducted a hearing to determine the validity of the superintendent's cease and desist order. The hearing officer issued his recommended decision, which was adopted by the superintendent in an order entered on November 3, 1988. The order vacated the stay and reinstated all provisions of the July 29, 1988 cease and desist order.

On December 8, 1988, appellant filed a complaint in the trial court that requested the superintendent's order be set aside. In response, appellees filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and (6), Arizona Rules of Civil Procedure, asserting that the trial court lacked subject matter jurisdiction and that appellant failed to state a claim upon which relief could be granted because appellant failed to exhaust his administrative remedies, as required by A.R.S. §§ 12–901(2) and 12–902(B). Appellant replied that his appeal to the trial court was permissible under the exception contained in A.R.S. § 12–902(B) regarding a challenge to an administrative agency's jurisdiction over a person or subject matter.

The trial court granted the motion to dismiss by minute entry and entered a judgment of dismissal on April 7, 1989. Appellant has appealed from this dismissal of his complaint.

■ On appeal, appellant continues to argue that he is challenging the superintendent's jurisdiction over him, and that therefore he was not required to exhaust administrative remedies before seeking judicial review. Appellant contends that his action falls under the exception for jurisdictional challenges in A.R.S. § 12–902(B), which provides:

> If under the terms of the law governing procedure before an agency an administrative decision has become final because of failure to file any document in the nature of an objection, protest, petition for hearing or application for administrative review within the time allowed by the law, the decision shall not be subject to judicial review under the provisions of this article *except for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter.* (emphasis added).

*See also State ex rel. Dandoy v. City of Phoenix,* 133 Ariz. 334, 336, 651 P.2d 862, 864 (App.1982).

In his complaint, appellant raised one allegation concerning the superintendent's lack of jurisdiction over him. This allegation, which was the only portion of the complaint considered by the trial court in the motion to dismiss, reads as follows:

> Finding No. 1 is in error, in that the Defendant Superintendent has no jurisdiction to take the action taken, because A.R.S. Article 6, Chapter 6–603(A), clearly states that this Chapter (6) applies only ... "to any person who seeks to avoid its application by an [sic] devise [sic], subterfuge or pretense".

Finding No. 1 of the cease and desist order is a jurisdictional statement that reads:

> Mary C. Short is the superintendent. The superintendent is charged with the enforcement of Chapter 5 of Title 6, Ari-

zona Revised Statutes, relating to consumer lenders.

Appellees asserted, and the trial court agreed, that appellant was confusing legal error with lack of jurisdiction and that what appellant was actually arguing was that the superintendent imposed penalties contrary to law. Both the court and appellees based this conclusion on *Oliver v. Arizona Department of Racing,* 147 Ariz. 83, 708 P.2d 764 (App.1985). In that case, Oliver, the appellant, contended that the department exceeded its jurisdiction by imposing a penalty not authorized by statute or agency rules. The *Oliver* court agreed with the department's assertion that this issue, which Oliver labeled as jurisdictional, was in fact an assertion of legal error (regarding the imposition of excessive penalties) that could be judicially reviewed only after Oliver had exhausted his administrative remedies. The court found that "[j]urisdiction relates solely to the competency of a tribunal to determine the controversies of a particular type of case." *Id.* at 87, 708 P.2d at 768.

Contrary to appellees' assertion and the trial court's ruling, we believe that appellant raised the issue of jurisdiction in the trial court. Although perhaps not clearly stated, appellant's complaint alleged that the superintendent did not have the jurisdiction to impose any penalties on him, not that the superintendent imposed penalties that were contrary to law. Conversely, in *Oliver* the appellant, who had been licensed by the agency involved, was complaining of excessive penalties imposed on him. In this case, appellant contends that the superintendent did not have jurisdiction over him because he was neither licensed nor sought to avoid the application of the Consumer Loan Act by device, subterfuge or pretense. This allegation relates to the competency of the superintendent to impose sanctions on appellant and thus is jurisdictional.

Even though the trial court found that appellant had not properly raised a jurisdictional challenge, the court ruled that the superintendent had jurisdiction in the case. The trial court consequently found that it lacked subject matter jurisdiction and dismissed the complaint. Because we agree that the superintendent had jurisdiction to impose sanctions on appellant, we affirm.[1]

Appellant has two primary bases for his argument that the superintendent lacked jurisdiction to impose sanctions on him for making consumer loans while unlicensed. First, appellant argues that A.R.S. § 6–603(A), which reads: "[t]his chapter applies to any person who seeks to avoid its application by any device, subterfuge or pretense," means that the only unlicensed persons over whom the superintendent has jurisdiction are those who sought to avoid the licensing regulations by device, subterfuge or pretense. Appellant contends that because the hearing officer found that there was insufficient evidence to show that appellant acted to avoid licensing by device, subterfuge or pretense, the provisions of the Consumer Loan Act, including the jurisdiction of the superintendent to impose sanctions, could not apply to him.

Appellant's second argument relies on *Transamerica Financial Corp. v. Superior Court,* 158 Ariz. 115, 761 P.2d 1019 (1988). The main issue in *Transamerica* was whether A.R.S. § 6–628 of the Consumer Loan Act gives a borrower a cause of action to declare a usurious loan void and to prohibit the collection or receipt of principal and interest. The court in that case held that such a cause of action is available to a borrower. In so holding, the court held that "[t]he failure of the legislature to expressly empower the superintend-

---

**1.** Although it is not clear to us whether the trial court's order was based on its belief that appellant had not raised a jurisdictional issue or on the court's finding that the superintendent had jurisdiction, we believe dismissal of the complaint was proper and therefore we affirm. The appellate court will affirm the trial court when it reaches the correct legal conclusion even if it does so for the wrong reason. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982); *Matter of Estate of Levine,* 145 Ariz. 185, 189, 700 P.2d 883, 887 (App.1985). The appellate court is not bound by the conclusions of law reached by the trial court. *Gary Outdoor,* 133 Ariz. at 242, 650 P.2d at 1224.

ent of banks to adjudicate a borrower's claim that the loan contract is void or to award damages to the borrower indicates that the legislature contemplated private actions to litigate these issues." *Id.* at 117, 761 P.2d at 1021. From this language, appellant concludes that the superintendent was not empowered to require appellant to forfeit the loans he made while unlicensed and to repay all principal and interest to the borrowers. Appellant also believes that the reference in *Transamerica* to an *amicus* brief filed by the superintendent supports this position. In a footnote, the *Transamerica* court noted that in the *amicus* brief the superintendent stated that borrowers had *no enforceable administrative remedy* because under the Act, only licensees had a statutory right to an administrative hearing. *Id.* at 117 n. 2, 761 P.2d at 1021 n. 2. We do not agree with appellant's arguments.

According to A.R.S. § 6–122(A), "[t]he superintendent has the authority and responsibility for the discharge of all duties imposed by law on the department." In A.R.S. § 6–137(A), the superintendent is authorized to issue cease and desist orders and to take other actions necessary to remedy violations of Title 6 of Arizona Revised Statutes. Section 6–137(A) reads:

If it appears to the superintendent that any person has engaged, is engaging or is about to engage in any act, practice or transaction which constitutes a violation of this title or any rule or order of the superintendent or a violation of any federal insurance regulation as determined by the appropriate federal regulatory authority in writing, the superintendent may issue an order directing the person and directors, officers, employees and agents of the person to cease and desist from engaging in the act, practice or transaction or doing any act in furtherance of the act, practice or transaction and to take appropriate affirmative action, within a reasonable period of time as prescribed by the superintendent, to correct the conditions resulting from the act, practice or transaction.

In the definition statute of the Consumer Loan Act, A.R.S. § 6–601 at paragraph 4, "license" is defined as "a license issued under the authority of this article to make loans in accordance with the provisions of this article." In A.R.S. § 6–601(5), "licensee" is defined as "a person required to have one or more licenses under this chapter." Section 6–602(A) then explains who must have a license as follows:

Any person who engages in the business of making consumer loans shall first obtain a license from the superintendent as provided in this article. A person who is not exempt under subsection B and who advertises for, solicits or holds himself out as willing to make or procure a consumer loan is presumed to be engaged in the business described in ʰis subsection.

Section 6–603(B) describes the penalty that is to be imposed on a person who is in the business of making consumer loans but who does not obtain the required license:

Any contract of loan in the making or collection of which any act has been done which violates subsection A of § 6–602 shall be void and the lender shall have no right to collect, receive or retain any principal, interest or charges whatever.

Read together, these statutes provide a scheme for licensing persons who make consumer loans and penalties to be applied by the superintendent to persons who make such loans without a license. Section 6–122 and, more particularly, A.R.S. § 6–137(A) give the superintendent the authority not only to issue cease and desist orders but also to take appropriate affirmative action to correct the conditions resulting from any act, practice or transaction that violates the rules and regulations for banks and other financial institutions, including persons who are in the business of making consumer loans. Section 6–602(A) explains who must obtain a license to make consumer loans, and A.R.S. § 6–603(B) describes the penalty for making such loans without a license. Clearly, if the superintendent may take appropriate affirmative action to correct violations of the Act, this affirmative action includes assessing and enforcing the penalty described in A.R.S. § 6–603 against

persons who violate the licensing requirements of A.R.S. § 6–602(A).

In light of this statutory scheme, we must reject appellant's argument that the superintendent may only impose penalties on licensees or persons who seek to avoid the application of the chapter by any device, subterfuge or pretense. Subsection B of A.R.S. § 6–603 provides that *any* loan made while unlicensed is void and the lender has no right to collect on such a loan. This subsection does not reference subsection A of A.R.S. § 6–603 regarding avoidance as a limitation. Furthermore, subsection A provides that "[t]his *chapter* applies to any person who seeks to avoid its application by any device, subterfuge or pretense." (emphasis added). If the forfeiture provision in subsection B is limited by subsection A to persons who seek to avoid application of the Act by device, subterfuge or pretense, all other provisions in Chapter 5, Title 6, Arizona Revised Statutes, would also have to be so limited because subsection A references "this chapter."

■ Statutes must be given a sensible construction which accomplishes the legislative intent behind them and which avoids absurd results. *State ex rel. v. Flournoy v. Mangum*, 113 Ariz. 151, 152, 548 P.2d 1148, 1149 (1976). If appellant's interpretation were accepted, an absurd result contrary to legislative intent would follow because there would be no incentive for any person making consumer loans to obtain a license or even to investigate licensing requirements, in spite of the fact that the legislature amended the Consumer Loan Act in 1984 to require that all consumer loans be made by licensed lenders. *See Rascon v. Transamerica Financial Corp.*, 74 Ariz.Adv.Rep. 32, 33, (App. Nov. 23, 1990). Under appellant's interpretation, as long as the loans were made openly and in apparent ignorance of the licensing laws, the lender could argue that there was no

device, subterfuge or pretense involved in his avoidance of the licensing regulations and thus escape any penalties for his failure to obtain a license. This interpretation is patently absurd. Appellant reads A.R.S. § 6–603(A) as "this chapter applies *only* to any person who seeks to avoid its application" and invites us to do likewise. The word "only" is not in the statute, however, and we cannot add it to satisfy appellant who, although he may have done so without any device, subterfuge or pretense, has run afoul of the consumer lender licensing scheme and is consequently subject to the penalties imposed by the Act.

■ Even if appellant were correct in his assertion that the superintendent's authority to impose penalties applies only to licensees and persons who seek to avoid the application of the chapter, he would still be subject to the superintendent's action. "Licensee" is defined in A.R.S. § 6–601(5) as a person *required* to have one or more licenses under the chapter. Appellant has admitted that he was not exempt from the licensing requirements. Therefore, even though he did not obtain the required license, appellant falls within the definition of "licensee." Accordingly, the superintendent has jurisdiction over him.

■ Appellant's second main argument, which is based on *Transamerica*, is that because the Arizona Supreme Court concluded that the superintendent is not empowered to adjudicate a borrower's claim under A.R.S. § 6–628,[2] the superintendent also is not empowered to order appellant to forfeit the loans and repay all principal and interest to the borrowers. Appellant contends that the power to issue injunctions and issue punitive orders are reserved to the courts.

Contrary to appellant's contentions, *Transamerica* and A.R.S. § 6–628 simply

---

2. A.R.S. § 6–628(B) provides:
   If any amount in excess of the charges permitted by this article is charged, contracted for or received, except as the result of an accidental or bona fide error, the contract of loan is void and the licensee has no right to collect or receive any principal, charges, or recompense whatever if the original principal amount financed is five thousand dollars or less, and the licensee has no right to collect any interest or charges if the principal amount financed is greater than five thousand dollars but less than ten thousand dollars.

do not control in a case in which a person has violated the licensing requirements. The *Transamerica* court noted that even though the court believed the legislature contemplated a private right of action for enforcement of a borrower's rights in A.R.S. § 6–628, other sections of the Consumer Loan Act "provide for administrative action for enforcement of its regulatory scheme." *Transamerica*, 158 Ariz. at 117, 761 P.2d at 1021. Thus, the fact that the *Transamerica* court found that the superintendent had no power to adjudicate a *borrower's* claim does not support appellant's conclusion that the superintendent also has no power to penalize a person who makes loans without first obtaining the required license.

Section 6–628 deals with excessive charges imposed by a licensee on a loan. Excessive charges under A.R.S. § 6–628 are particularly relevant to the relationship between the borrower and lender. The penalty of voidness imposed by A.R.S. § 6–628(B) inures to the benefit of the borrower as a sanction against the lender for imposing excessive charges. Similarly, licensing regulations are particularly relevant to the superintendent in his or her role as a regulator of consumer loans and protector of borrowers. However, while the superintendent's act of voiding a loan as a penalty against an unlicensed lender may inure to the benefit of the borrower, its primary objective is to punish a person who loans in violation of the licensing statutes.

Statutes must be construed in such a way as to effectuate their purpose and promote justice. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974). The superintendent must have jurisdiction over unlicensed lenders who should be licensed if the licensing provisions of the Consumer Loan Act are to make any sense or have any substance.

Section 6–628 not only does not provide support for appellant's position, it lends credence to our rejection of appellant's interpretation of A.R.S. § 6–603(B). Section 6–628(B) provides in part that "[i]f any amount in excess of the charges permitted by this article is charged, contracted for or received, *except as the result of an accidental or bona fide error,* the contract of loan is void ..." (emphasis added). If the legislature had intended the forfeiture provisions of A.R.S. § 6–603(B) to be limited to those who avoided the licensing requirement intentionally, i.e., "by any device, subterfuge or pretense" as set out in A.R.S. § 6–603(A), it could have done so specifically as it did in A.R.S. § 6–628(B).

In summary, we conclude that the superintendent has jurisdiction to enter both cease and desist orders and penalties pursuant to A.R.S. § 6–603(B) against persons who engage in the business of making consumer loans without a license regardless of whether such person has sought to avoid the licensing requirement by any device, subterfuge or pretense. We note that we have examined only whether the superintendent had the jurisdiction to issue orders regarding appellant's conduct in making consumer loans while unlicensed. We do not reach the question of the propriety or correctness of any orders issued by the superintendent regarding appellant. Because we hold that the superintendent had jurisdiction over appellant, an unlicensed lender, to issue such orders, the orders must stand because appellant did not apply for administrative review of the *substance* of the superintendent's findings and orders as required by statute. *See* A.R.S. §§ 12–901(2) and 12–902(B); A.C.R.R. R4–4–1219. *See also Herzberg v. David,* 27 Ariz.App. 418, 419, 555 P.2d 677, 678 (1976).

The judgment of the trial court is affirmed.

TAYLOR, P.J., and LANKFORD, J., concur.