*880 P.2d 1159*

Morton L. ROBERTS, Plaintiff–Appellee,

v.

The STATE of Arizona, the Arizona State Banking Department, William H. Rivour, III, Superintendent of Banks; Harold E. Sweeney, Deputy Superintendent of Banks; and David M. Talamante, Hearing Officer, Arizona State Banking Department, Defendants–Appellants.

No. 1 CA–CV 92–0453.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 8, 1994.

---

Lalliss, Trompeter, Tanner & Hulse by Wallace O. Tanner, Phoenix, and Gibson, Matheson, Weber, & Lalliss by Keith R. Lalliss, Mesa, for plaintiff-appellee.

Grant Woods, Atty. Gen. by H. Leslie Hall, Chief Counsel, Consumer Protection and Antitrust Section, and Felecia A. Rotellini, Asst. Atty. Gen., Phoenix, for defendants-appellants.

## OPINION

KLEINSCHMIDT, Judge.

In this case, we hold that the Arizona Superintendent of Banks has the authority to order a person to repay loan fees earned on transactions which were unauthorized because the person was not a licensed mortgage broker. The case arose as follows.

In 1989, the Superintendent ordered an examination of the affairs of Old Phoenix National Mortgage Company, Inc., to determine whether it was in compliance with the statutes regulating mortgage brokers. The examiners concluded that Morton L. Roberts, who claimed that he was an employee of Old Phoenix, was acting as a mortgage broker without having the license required by Ariz.Rev.Stat.Ann. ("A.R.S.") section 6–903(A).[1]

After reviewing the examiner's report, the Superintendent concluded that Roberts had been acting as a mortgage broker without a license and that he had also violated A.R.S. section 6–909(B) by receiving direct compensation for arranging or negotiating a mortgage loan.[2] The Superintendent issued an order requiring Roberts, among other things, to cease and desist from acting as a mortgage broker without a license and directing Roberts to repay to borrowers all loan fees

---

1. A.R.S. section 6–903(A) provides that "[a] person shall not act as a mortgage broker if he is not licensed under this article."

2. A.R.S. section 6–909(B) provides that "[a] person is not entitled to receive compensation in connection with arranging for or negotiating a mortgage loan if such person is not licensed pursuant to this article."

he received from the mortgage loans he had made. The Superintendent relied on A.R.S. section 6–137(A) as authority for the order. That statute reads, in relevant part, as follows:

Section 6–137(A):

A. If it appears to the superintendent that any person has engaged, is engaging or is about to engage in any act, practice or transaction which constitutes a violation of this title ... the superintendent may issue an order directing the person and directors, officers, employees and agents of the person to cease and desist from engaging in the act, practice or transaction or doing any act in furtherance of the act, practice or transaction and to take appropriate affirmative action, within a reasonable period of time as prescribed by the superintendent, to correct the conditions resulting from the act, practice or transaction.

After the Superintendent issued his order, Roberts requested a formal departmental hearing at which he tried to prove that he had been an employee of Old Phoenix. The State concedes that, if Roberts was an employee of Old Phoenix, his activities would have been legitimate because he would have been covered by his employer's license. Roberts also challenged the claim that he had received "compensation" within the meaning of A.R.S. section 6–909(B).

The hearing officer acknowledged that the evidence as to Roberts' employment status was conflicting, but he concluded that Roberts was not an employee but instead had been acting "in an independent capacity while working with and through Old Phoenix." He also found that Roberts was funding loans through Old Phoenix, typically by depositing his own funds in an escrow account from which money was disbursed to borrowers and to pay the costs of the transaction, leaving the balance as a loan fee for Roberts. The borrowers would execute a promissory note in favor of Roberts which included the amount of the loan fee, and Roberts would resell the promissory note at a discount.

The hearing officer concluded that the transactions resulted in "compensation" be-

ing paid to Roberts within the meaning of A.R.S. section 6–901(2) and that Roberts was acting as a "mortgage broker" within the meaning of A.R.S. section 6–901(6). He also concluded that Roberts was not exempt from licensure pursuant to A.R.S. section 6–902 and that he was not an employee of Old Phoenix within the meaning of A.R.S. section 6–903(E). Finally, the hearing officer concluded that evidence supported entry of the cease and desist order, and he recommended that the Superintendent reaffirm his original order in all respects. The Superintendent adopted the hearing officer's findings and conclusions and did reaffirm all the provisions of his, the Superintendent's, original order.

After exhausting his administrative remedies, Roberts sought judicial review pursuant to A.R.S. sections 6–139 and 12–901 *et seq.* seeking to set aside the Superintendent's entire order on the basis of his contention that he had been an employee of Old Phoenix. He asked the court, regardless of what it found with respect to his status as an employee, to set aside the part of the order requiring him to pay back the loan fees he had received. He argued that the Superintendent had no statutory authority to order the return of these loan fees to the borrowers.

The trial court refused to set aside the entire cease and desist order but agreed with Roberts that the Superintendent did not have authority to order Roberts to pay back the loan fees he had received. The court vacated that part of the order, reasoning as follows:

The Superintendent bases his authority to make such a "restitution" order upon A.R.S. § 6–137. However, that statute authorizes the Superintendent to *"issue an Order*—to cease and desist,—and to *take* appropriate affirmative *action*—to correct the conditions resulting from the—transaction." (emphasis added). The Order which the Superintendent is authorized to make under this statute is to "cease and desist". The statute does not state that the "appropriate affirmative action" may be a part of the Superintendent's own Order. However, the appropriate affirmative

action by the Superintendent could be an action in the Superior Court.

There is little case authority to explain what the statute means. *Collins v. State* (166 Ariz. 409) [803 P.2d 130 (App.1990)] states that "affirmative action" includes the assessing and enforcing of a penalty. The *Collins* case was under the Consumer Loan Chapter of Title Six, which authorizes a penalty. (A.R.S. Sec. 6–628). The Mortgage Broker Chapter (Chapter 9) does not authorize a penalty. Chapter 9 specifically provides that a failure to comply does not affect the validity or enforceability of the debt or its security. Yet, the Superintendent's restitution order would make a part of the borrower's debt invalid and unenforceable (the part which is equal to the compensation received by the unlicensed investor.)

The State appealed from that part of the order which holds that the Superintendent had no authority to order restitution.

### THE SUPERINTENDENT HAD AUTHORITY TO ORDER ROBERTS TO PAY BACK THE LOAN FEES

We are not bound by either the agency's or the trial court's conclusions as to questions of statutory interpretation. *Siegel v. Arizona State Liquor Bd.*, 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991). Section 6–137 gives the Superintendent authority to direct persons both "to cease and desist . . . and [to direct persons] to take appropriate affirmative action, within a reasonable period of time as prescribed by the superintendent, to correct the conditions resulting from the act, practice or transaction." The trial court read the statute too narrowly to mean that all the Superintendent could do in the way of affirmative action was bring suit to correct the conditions resulting from the improper acts of persons subject to the Superintendent's authority.

There are several indicators in the statute that the legislature intended that the Superintendent himself have the power to remedy wrongs perpetrated by persons subject to his authority. It directs the Superintendent to take affirmative action "within . . . [the] time as prescribed by the superinten-

dent." This phrase carries the inference that it is the Superintendent, not a judge, who may fashion and oversee a remedy. If the legislature intended that the only action the Superintendent could take to remedy wrongs was to file suit, it seems likely that it would have explicitly limited his power in that fashion. We are aware that in subsection (F) of this same statute, the Superintendent is authorized to seek an injunction from the superior court, and that A.R.S. section 6–132 allows the Superintendent to ask the attorney general to bring an action in superior court to exact a civil penalty from persons who have willfully violated the provisions of the regulatory statute. Giving the Superintendent authority to bring a suit is not, however, the same thing as restricting the Superintendent's authority to order restitution. We are not, in this case, concerned with what steps the Superintendent can or must take to enforce the orders he enters.

Restitution is the type of "appropriate affirmative action" the Superintendent can order pursuant to A.R.S. section 6–137(A). In *Collins v. State*, 166 Ariz. 409, 803 P.2d 130 (App.1990), we considered the Superintendent's authority to regulate consumer lenders. In that case, the Superintendent ordered the unlicensed appellant, pursuant to the same statute the Superintendent relies on here, A.R.S. section 6–137, both to cease and desist from making loans and to refund all principal, interest and charges the appellant had previously collected. The appellant argued that the Superintendent had no authority to order such a refund. We noted that the Superintendent may, under section 6–137(A), issue cease and desist orders and take other actions necessary to remedy violations of Title 6. We also noted that A.R.S. section 6–603(B) provides that any loan contract made in violation of the statute requiring licensing is void and the lender has no right to collect, receive or retain any principal, interest or charges related to that loan. We concluded that under the statutory scheme, the superintendent could enter an order prohibiting the appellant from collecting or receiving repayment of the loan.

■ Just as the Superintendent in *Collins* could order an unlicensed lender not to collect on the loan, in this case, he has authority to enforce A.R.S. section 6–909(B) by requiring restitution of a loan fee. We reject Robert's argument, as we rejected a similar argument in *Collins,* that because the statute authorized a borrower to sue an unlicensed mortgage broker for a return of his commission, the Superintendent is not empowered to enter an order requiring a similar remedy.

■ Roberts, however, points out that in most cases, his loan fee became a part of the debt owed by borrowers for the loan they received. He argues that because A.R.S. section 6–910 relating to mortgage brokers provides in relevant part that "[a] failure to comply with this article does not affect the validity or enforceability of any debt, mortgage, deed of trust or any other lien interest on real estate," [3] a return of his commission would violate this provision.

We disagree. Roberts' reading of section 6–910 would emasculate section 6–909(B), which provides that "[a] person is not entitled to receive compensation in connection with arranging for or negotiating a mortgage loan if such person is not licensed pursuant to this article." Section 6–910 must be read to exclude from its provisions any portion of the debt incurred by the borrower as a loan fee paid to an unlicensed mortgage broker. The Superintendent had authority to order Roberts to reimburse the borrowers for the compensation he received.

## IT WAS NOT AN ABUSE OF DISCRETION TO FIND THAT ROBERTS WAS NOT AN EMPLOYEE OF OLD PHOENIX

■ As a cross-issue, Roberts argued in his brief that the Superintendent erred when he found that Roberts was not an employee of Old Phoenix. The State, citing cases like *Bowman v. Board of Regents,* 162 Ariz. 551, 785 P.2d 71 (App.1991), argues that we have no jurisdiction to consider this issue because Roberts failed to file a cross-appeal. Rule 13(b)(3) of the Arizona Rules of Civil Appellate Procedure, which became effective after the cases relied on by the State were decided, provides:

> The brief of the appellee may, without need for a cross-appeal, include in the statement of issues presented for review and in the argument any issue properly presented in the superior court. The appellate court may affirm the judgment based on any such grounds. The appellate court may direct that the judgment be modified to enlarge the rights of the appellee or to lessen the rights of the appellant only if the appellee has cross-appealed seeking such relief.

The State Bar Committee Note explaining the rule says:

> The new rule changes prior Arizona law by now allowing affirmance, without a cross-appeal, upon a ground which could also suggest an enlargement of the appellee's right or a lessening of the appellant's rights from what is provided in the judgment of the superior court. The appellate court may now affirm a judgment on such ground, but the judgment may not actually be modified to improve the appellee's rights unless the appellee has also taken the cross-appeal.

■ The argument Roberts asks us to consider was presented in the trial court and raised in his brief. Under the new rule, it is proper for us to consider the argument because a resolution in Roberts' favor would provide another ground for upholding the superior court's judgment vacating the portion of the Superintendent's order dealing with restitution and compensation. Were we to rule in Roberts' favor on the issue, though, we would not expand Roberts' rights by vacating the remainder of the Superintendent's order. We would be precluded from doing so because of Roberts' failure to cross-appeal.

■ If the record will support either of two inconsistent conclusions, we will not substitute our judgment for that of the administrative decision maker regardless of which conclusion was selected. *Owen v. Creedon,* 170 Ariz. 511, 512, 826 P.2d 808, 809 (App. 1992). In this case, there is evidence sug-

---

3. The penalty of forfeiture of the consumer loan found in A.R.S. § 6–603(B) is more stringent than the penalty for mortgage brokers found in A.R.S. § 6–909(B) which merely provides that an unlicensed broker cannot receive a commission.

gesting that both Roberts and the man who ran Old Phoenix considered Roberts an employee of the company. There was other evidence, however, from which the fact finder could have concluded that Roberts was not working for Old Phoenix in the legal capacity of an employee. Most notably, the company withheld no taxes or social security from the money Roberts received, although it did withhold for other persons it considered to be employees. The Superintendent did not abuse his discretion in concluding that Roberts was not an employee of Old Phoenix.

## ROBERTS DOES NOT FALL WITHIN ANY EXEMPTION TO REGULATION

Arizona Revised Statutes section 6-902(A)(2) exempts from licensure persons who are not engaged in the business of making mortgage loans and who make such loans as a personal investment with their own money and without an intent to resell the loan. The trial court concluded that the Superintendent had failed to rule out that Roberts was exempt under this provision because the Superintendent did not find that Roberts made the loans with the intent to resell them and did not find that Roberts was engaged in the business of making mortgage loans.

We agree with the State that the trial court erred on this issue. Roberts never argued that he came within the exemption found in section 6-902(A)(2), he did not request the findings that the trial court made on this point, and he does not address this issue on appeal. The hearing officer's finding was that Roberts was not exempt under the statute and the Superintendent adopted this finding when he reaffirmed his original order. This finding is adequately supported by the evidence.

The judgment of the trial court is reversed. This case is remanded with directions to enter judgment affirming the Superintendent's order.

JACOBSON, P.J., Department B, and FIDEL, J., concur.