OPINION
BALES, Justice.
¶ 1 Because Arizona’s constitution directs that “[e]very measure when finally passed shall be presented to the governor for [her] approval or disapproval,” art. 4, pt. 2, § 12, this Court ruled on June 23, 2009, that the Respondents (collectively, the “Legislature”) cannot pass bills and then withhold them to prevent the Governor from exercising her power to approve or veto legislation. Given the unusual circumstances of this case, however, we also declined to order the Legislature to immediately present the Governor the budget bills at issue here. This opinion explains our earlier order.
I.
¶ 2 This litigation arises from a dispute between the Governor and the Legislature regarding the state budget for the 2010 fiscal year.
¶ 3 On June 4, 2009, the Arizona Senate passed, by a simple majority vote, several appropriations bills: Senate Bills 1027, 1028, 1029, 1031, 1035, 1036, 1145, 1187, 1188, and 1258 (collectively, the “Budget Bills”). After passage, the Senate President, Robert Burns, signed the engrossed version of the bills in open session and ordered the bills transmitted to the Arizona House of Representatives, which passed the bills that day. Upon signing the bills, Kirk Adams, Speaker of the House of Representatives, directed the Chief Clerk to return them to the Senate.
¶ 4 Governor Janice K. Brewer publicly announced her opposition to the Budget Bills and her intent to veto them at least in part. The Legislature, however, declined to present them to her. On June 15, 2009, the Governor delivered a letter to President Burns and Speaker Adams requesting that they present the Budget Bills to her by 5:00 p.m. that day. They responded that the bills would be presented during the legislative session, but it would be “premature” to transmit them before the Legislature and Governor had reached agreement on a budget.
¶ 5 The next day, the Governor filed' a petition for special action asking this Court to order the Legislature to present the Budget Bills to her without further delay. After expedited briefing, this Court heard oral argument on June 23, 2009.
II.
¶ 6 Both the Legislature and the Governor candidly acknowledge that their disagreement over the timing of the presentment of the Budget Bills reflects an effort by each branch to enhance its position in ongoing *237 budget negotiations. The enactment of a budget often involves political disagreement, bargaining, and compromise. Because this Court is reluctant to enter the arena of political disputes between the executive and legislative branches, we first consider whether the issue presented is proper for judicial resolution.
A. Jurisdiction
¶ 7 Article 6, Section 5(1) of the Arizona Constitution grants this Court original jurisdiction over “mandamus, injunction and other extraordinary writs to State officers.” We exercise this jurisdiction through the special action procedure, but our decision to accept jurisdiction is “highly discretionary.” Forty-Seventh Legislature v. Napolitano, 213 Ariz. 482, 485 ¶¶ 10-11, 143 P.3d 1023, 1026 (2006); Randolph v. Groscost, 195 Ariz. 423, 425 ¶ 6, 989 P.2d 751, 753 (1999).
¶ 8 This case warrants the exercise of our special action jurisdiction. The key issue is whether our constitution allows the Legislature to pass bills, but then refuse for political reasons to present them to the Governor for her veto or approval. We accepted jurisdiction because the two political branches have a good faith dispute over their respective powers in the lawmaking process and the issue is of first impression and statewide importance. See Forty-Seventh Legislature, 213 Ariz. at 485-86 ¶ 11, 143 P.3d at 1026-27; Randolph, 195 Ariz. at 425 ¶ 6, 989 P.2d at 753.
¶ 9 The Legislature argues that even if special action jurisdiction is appropriate, the Governor should have instead filed this action in the superior court because there are “intense fact questions.” We disagree. The relevant facts are undisputed; the merits of this ease turn on the meaning of a constitutional provision. In light of the parties involved, the issue, and the timing of this dispute in relation to the enactment of a budget, special action relief was properly sought from this Court. See League of Ariz. Cities & Towns v. Martin, 219 Ariz. 556, 558 ¶ 4, 201 P.3d 517, 519 (2009).
B. Standing and Ripeness
¶ 10 The Legislature also argues that the Governor lacks standing and the dispute is not ripe for judicial resolution.
¶ 11 Athough “we are not constitutionally constrained to decline jurisdiction based on lack of standing,” Sears v. Hull, 192 Ariz. 65, 71 ¶ 24, 961 P.2d 1013, 1019 (1998), “[cjoneern over standing is particularly acute”,when this Court is asked, in effect, to referee disputes between the political branches. See Bennett v. Napolitano, 206 Ariz. 520, 525 ¶ 20, 81 P.3d 311, 316 (2003) (“Without the standing requirement, the judicial branch would be too easily coerced into resolving political disputes between the executive and legislative branches, an arena in which courts are naturally reluctant to intrude.”).
¶ 12 To have standing, a party generally must allege a particularized injury that would be remediable by judicial decision. See id. at ¶¶ 18, 22. The Governor contends that she has standing because the Legislature’s refusal to present her with finally passed bills violates the constitutionally established procedure for lawmaking and undermines her express authority to veto or approve bills. See Ariz. Const. art. 4, pt. 2, § 12; art. 5, § 7.
¶ 13 The Legislature, in contrast, argues that the Governor’s constitutional power to veto or approve a bill is not triggered until it is presented to her, and therefore she cannot complain of any constitutional injury based on the Legislature’s refusal to present the bills.
¶ 14 The Governor has the better argument on standing. If she is correct that the Legislature has violated the constitution by withholding finally passed bills from her review, then she has sustained a direct injury to her constitutional authority. Cf. Forty-Seventh Legislature, 213 Ariz. at 487 ¶ 15, 143 P.3d at 1028 (finding that Legislature had standing to challenge alleged unconstitutional exercise of line-item veto). The Legislature’s standing arguments presume that the Legislature is correct on the merits, that is, that the Legislature can, at'its discretion, withhold finally passed bills from the Gover *238 nor and thus she has sustained no injury. Our standing analysis, however, looks to whether the petitioner has plausibly alleged particularized injury as a precondition to the Court’s deciding the merits; defendants cannot defeat standing merely by assuming they will ultimately win.
¶ 15 The Legislature similarly argues that the Governor’s lawsuit is not ripe because when this case was submitted for decision, the Legislature was still in session and the Governor is not entitled to the presentment of finally passed bills before the Legislature adjourns. The Legislature cites Campaign for Fiscal Equity, Inc. v. Marino, which held that because the New York Constitution implicitly requires the presentment of bills -within a “reasonable time,” the New York Legislature could not adjourn without transmitting bills it had passed. 87 N.Y.2d 235, 638 N.Y.S.2d 591, 661 N.E.2d 1372, 1374 (1995). The Legislature’s argument here again goes more to the merits than to ripeness. The Governor argues that the constitution requires transmittal of a bill once it has finally been passed, even if the Legislature has not yet adjourned. If the Governor is correct in her interpretation of the constitution, she suffered a constitutional injury.
C. Justiciability
¶ 16 The Legislature finally argues that this case presents a nonjusticiable political question. Even if a case is within a court’s subject matter jurisdiction and is timely brought by a party with standing, a court should abstain from judicial review of the merits if the issue is properly decided by one of the “political branches” of government. Kromko v. Ariz. Bd. of Regents, 216 Ariz. 190, 192-93 ¶¶ 11-12, 165 P.3d 168, 170-71 (2007).
¶ 17 The fact that a lawsuit involves a disagreement between the political branches does not necessarily mean that it presents a political question. See INS v. Chadha, 462 U.S. 919, 942-43, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (noting that “the presence of constitutional issues with significant political overtones does not automatically invoke the political question doctrine”); Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (observing that doctrine concerns “political questions” rather than “political cases”). A controversy only presents a nonjusticiable political question if it involves “a textually demonstrable constitutional commitment of the issue to a coordinate political department” or lacks “judicially discoverable and manageable standards” for its resolution. Kromko, 216 Ariz. at 192 ¶ 11, 165 P.3d at 170 (internal quotation marks omitted); see also Forty-Seventh Legislature, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026.
¶ 18 The Legislature first argues that the Arizona Constitution allows it to determine the timing of presentment of bills to the Governor because Article 4, Part 2, Section 8 states that each house shall “determine its own rules of procedure.” This provision, however, cannot limit or otherwise qualify the directive in Article 4, Part 2, Section 12 that “[ejvery measure when finally passed shall be presented to the Governor.” Section 12 does not by its terms commit to the Legislature the decision on the timing of presentment of finally passed bills.
¶ 19 The Legislature alternatively argues that there are no judicially identifiable and manageable standards for determining how promptly the Legislature must present bills to the Governor. But this argument also presumes a particular resolution of the merits. The Legislature contends that if it does not have unfettered discretion to determine when to present bills to the Governor, then the only alternative is for courts to assess whether the Legislature has acted “reasonably” in delaying presentment, and this inquiry is inherently subjective and political.
¶ 20 We also reject this argument. Courts regularly assess the reasonableness of actions in many contexts, ranging from searches and seizures to the enforceability of contractual terms. Perhaps even more importantly, resolving this case on the merits does not necessarily imply that courts will need to assess on a case-by-case basis whether the Legislature has “reasonably” decided to delay presentment. The Governor’s argument is that the constitution might instead simply require presentment when bills are finally passed, with only such delay as might *239 reasonably be required for the Legislature to complete the ministerial tasks of signing the bills and arranging for formal transmittal.
¶ 21 The issue here is not whether the Legislature should include particular items in a budget or enact particular legislation. Such issues, like the Governor’s decision whether to veto or approve a bill or the Legislature’s decision whether to attempt an override, clearly are political questions. Forty-Seventh Legislature, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026. Instead, this ease concerns the respective powers of the Legislature and the Governor once the Legislature has finally passed a bill.
¶ 22 Rather than concern a political question, this issue is one of law and appropriate for judicial resolution. As we noted in a case in which a legislature challenged a governor’s actions in the lawmaking process: “To determine whether a branch of state government has exceeded the powers granted by the Arizona Constitution requires that we construe the language of the constitution and declare what the constitution requires. Such questions traditionally fall to the courts to resolve.” Id. at ¶ 8.
III.
¶ 23 We accordingly turn to the merits. Arizona’s constitution details the procedure for final passage of bills by stating that every bill shall be read three times, except in cases of emergency, that “[t]he vote on the final passage of any bill ... shall be taken by ayes and nays on roll call,” art. 4, pt. 2, § 12, and that “[a] majority of all members elected to each house shall be necessary to pass any bill,” id. § 15. Once these steps are completed, a bill is “finally passed” for purposes of Section 12. See Cox v. Stults Eagle Drag Co., 42 Ariz. 1, 4-5, 21 P.2d 914, 915 (1933) (noting that “final passage” occurs when each house has approved bill in the same form, as “there is nothing further for either of them to do with it to complete it”), overruled on other grounds by State ex rel. La Prade v. Cox, 43 Ariz. 174, 30 P.2d 825 (1934).
¶ 24 After a bill is finally passed, both the constitution and the legislative rules contemplate the completion of certain ministerial tasks before it is presented to the Governor. The presiding officer of each house must sign all passed bills in open session. Ariz. Const, art. 4, pt. 2, § 15. The Senate has designated its Secretary as the custodian of bills, Arizona Senate Rule 3(B) (2009-10), and the House has provided that its Chief Clerk shall be responsible for transmitting bills. Arizona House of Representatives Rule 5 (2009-10). Thus, these officers also have ministerial responsibilities in transmitting finally passed bills to the Governor.
¶ 25 The Budget Bills were finally passed by the Legislature on June 4, 2009, so the dispute among the parties concerns solely the timing of their delivery to the Governor. The constitution declares that “[e]very measure when finally passed shall be presented to the governor for [her] approval or disapproval.” Ariz. Const, art. 4, pt. 2, § 12. The Governor argues that the constitution requires such bills to be delivered to her with only such delay as may be reasonably necessary to complete ministerial acts related to transmittal. The Legislature first argued that it could delay presentment of finally passed bills at its discretion or, alternatively, could at least wait until the end of a legislative session. After this Court announced its ruling,, the Legislature filed a motion for reconsideration arguing instead that it should be allowed to delay presentment for some “reasonable time.”
i ¶ 26 The “Constitution should be construed so as to ascertain and give effect to the intent and purpose of the framers and the people who adopted it.” State ex rel. Morrison v. Nabours, 79 Ariz. 240, 245, 286 P.2d 752, 755 (1955). We give effect “to the purpose indicated, by a fair interpretation of the language used, and unless the context suggests otherwise words are to be given their natural, obvious and ordinary meaning.” Id.
¶ 27 In ordinary usage, the phrase “when finally passed” would be understood to mean upon final passage and not at whatever later time the Legislature might deem appropriate. Dictionary definitions of “when,” both contemporary and historical, signal a point in time related to the occurrence of a specific event. See, e.g., Webster’s II New College *240 Dictionary 1286 (3d ed.2005) (defining “when” as “at which time” or “[a]s soon as”); 2 A Standard Dictionary of the English Language 2055 (N.Y., Funk & Wagnalls Co. 1895) (defining “when” as “[a]t which or what time” or “[a]fter that; as soon as”). Because nothing in the constitution indicates a different meaning, we construe the use of “when” to require presentment upon final passage of a bill. The use of “shall” further underscores the mandatory nature of the Presentment Clause. See Ariz. Const, art. 2, § 32 (“The provisions of th[e] Constitution are mandatory, unless by express words they are declared to be otherwise.”).[1]
¶ 28 The constitution, as the Governor acknowledges, cannot practically be interpreted to require presentment immediately when a bill receives the required approval by each house. We interpret the language directing that presentment “shall” occur for bills “when finally passed” to allow such time as may reasonably be necessary to complete ministerial acts such as the signing of the bill by the presiding officer and other tasks to effect the transmittal to the Governor. Cf. State ex rel. Berger v. McCarthy, 113 Ariz. 161, 163, 548 P.2d 1158, 1160 (1976) (noting that statutory directive that action “shall” be done contemplates performance within period which will promote prompt and orderly conduct of the proceedings). We are confident that the Legislature can expeditiously transmit finally passed bills to the Governor and that litigation will not be necessary or appropriate regarding relatively short delays in presentment to complete ministerial tasks and orderly delivery.
¶ 29 We reject, however, the Legislature’s alternative argument that it should be allowed to “reasonably” delay presentment on a more open-ended basis, and that this Court should “leave the determination of what is reasonable to the Legislature’s discretion.” Such an amorphous standard would vitiate the constitutional directive that presentment occur “when” bills are finally passed.
¶ 30 Nor are we persuaded by the concurrence’s suggestion that the Legislature should be allowed to delay presentment for a “reasonable time” beyond that reasonably required for the orderly transmittal of bills. Even under this test, the Legislature could not delay presentment indefinitely, see ¶¶ 43, 54, infra, and the concurrence evidently concludes that the Legislature unreasonably withheld the Budget Bills here, see ¶¶ 43-44, infra. But the concurrence does not explain how courts are to assess if a delay is reasonable. Because this standard is not tethered to the time needed to complete orderly deliv *241 ery, it would undesirably require courts to make subjective, ad hoc evaluations of the Legislature’s delay in transmitting bills.
¶ 31 The Legislature also argues that other state courts, in construing presentment clauses that lack any specified time requirement, have not interpreted their constitutions as requiring prompt presentment of bills to the governor. See, e.g., Cenarrusa v. Andrus, 99 Idaho 404, 582 P.2d 1082, 1087 (1978). Many state constitutions say nothing about the timing of presentment other than indicating it must occur sometime after passage. See, e.g., Ala. Const, art. 5, § 125 (“Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor.”); Idaho Const, art. 4, § 10 (“Every bill passed by the legislature shall, before it becomes a law, be presented to the governor____”).
¶ 32 Arizona’s constitution, in contrast, specifies that measures shall be presented “when finally passed.” Thus, we are not persuaded by the out-of-state cases cited by the Legislature. We also note that some state courts have concluded that legislatures do not have unlimited discretion to withhold bills, although these courts were also interpreting constitutional language that differs from Arizona’s. See Campaign for Fiscal Equity, 638 N.Y.S.2d 591, 661 N.E.2d at 1373 (construing New York’s constitution as implicitly requiring presentment within a reasonable time after passage); State ex rel. Ohio Gen. Assembly v. Brunner, 114 Ohio St.3d 386, 872 N.E.2d 912, 924 (2007) (stating that Ohio Constitution, by use of term forthwith, requires presentment promptly).
¶33 The Legislature also contends that requiring presentment upon final passage would be inconsistent with legislative practices dating from early statehood. Long-established practices, accepted by other branches of government, may be relevant in construing constitutional provisions. See, e.g., Stuart v. Laird, 5 U.S. (1 Cranch) 299, 309, 2 L.Ed. 115 (1803) (propriety of requiring justices to sit as circuit judges established by “practice and acquiescence ... commencing with the organization of the judicial system”). In this regard, the Legislature argues that its own rules, both as adopted by the First Legislature and currently, contemplate that the Legislature may reconsider bills after final passage, and that past legislatures have sometimes held bills for days or even weeks.
¶ 34 Neither the current rules nor the rules of the First Legislature specifically address the reconsideration of finally passed bills. Instead, the current rules more generally provide that each house may reconsider its vote on any matter if an appropriate motion is filed no later than the next day the legislature is in session. See Arizona Senate Rule 13; Arizona House of Representatives Rule 24. The rules of the First Legislature are not materially different in this regard. See Arizona Senate Rule 16 (1912); Arizona House of Representatives Rule 48 (1912). The Legislature also notes that each house can suspend its rules, which conceivably would allow a motion for reconsideration to be filed later than the day after the vote.
¶ 35 This case does not present and we do not address the effect of a motion for reconsideration on the Legislature’s constitutional duty of presentment to the Governor. We reject, however, the suggestion that the Legislature’s power to prospectively suspend or amend its internal rules somehow establishes that, in the absence of such a motion, the Legislature may delay indefinitely, or at least to the end of the legislative session, the presentment of finally passed bills.
¶ 36 The Legislature also notes that, over the last eighteen years, some twenty-five bills were delayed in their transmittal from six to forty-nine days. The basis for these delays, however, is not clear and it does not appear that any of them were challenged.[2] *242 The Legislature in fact appears to have almost always presented bills to the Governor promptly upon their final passage. The Governor notes, and the Legislature does not dispute, that all 315 bills finally passed during the Second Regular Session of the Forty-Eighth Legislature were presented to the Governor within two days. Similarly, a partial review of bills passed in the first two legislatures suggests that each house regularly transmitted bills to the Governor upon receipt of a message from the other house indicating final passage. The corresponding legislature’s journal entries state something to the effect of: “The President announced that Senate Bill No. 1 had been passed by the Senate and the House of Representatives and the Secretary was instructed to transmit same to the Governor.”
¶ 37 The Legislature has not demonstrated any tradition of its withholding finally passed bills — or any acceptance of that practice by the other branches — sufficient to justify departing from the ordinary meaning of the constitution. At most, the Legislature has identified isolated instances when the presentment of finally passed bills was delayed for unexplained reasons and apparently without objection from the Governor.
¶ 38 Finally, in its motion for reconsideration, the Legislature contends that “practical difficulties” will result if it must promptly present finally passed bills to the Governor. Delay in presentment, the Legislature argues, will allow it the opportunity to “fix” legislative mistakes or otherwise reconsider bills. We find this argument unpersuasive. The constitution outlines a process to protect against the precipitous enactment of legislation — the Legislature itself determines when to enact bills, which are subject to three reads in each house and a roll call final vote. Ariz. Const, art. 4, pt. 2, § 12. If the Legislature concludes that it has mistakenly enacted a bill, members can urge the Governor to veto the bill or they can enact a corrective repeal or amendment. As noted above, this case does not involve a motion seeking reconsideration of a house’s approval of a bill, and we do not address the effect of such a motion on the duty of presentment.
¶ 39 Because the constitution directs that bills shall be presented to the Governor “when finally passed,” we hold that the Legislature must present such bills to the Governor with no more delay than is reasonably necessary to complete any ministerial tasks and otherwise effect their orderly transmittal. This standard was not met here.
IV.
¶ 40 Although we agree with the Governor that the Legislature cannot delay its presentment of finally passed bills to avoid her constitutional veto power, we declined in this case to grant the requested •relief. The Governor sought an order compelling the Legislature to deliver the Budget Bills to her by 5:00 p.m. on June 23.
¶ 41 Mandamus is based on equitable principles. Sines v. Holden, 89 Ariz. 207, 209, 360 P.2d 218, 220 (1961). Thus, “even in a case where an absolute legal right is shown,” we retain discretion to determine w'hat relief, if any, should be granted. Id. For several reasons, we declined to grant the requested relief here.
¶ 42 This ease involves a good-faith dispute between the political branches of government about their respective roles in Arizona’s lawmaking process. Had the Legislature anticipated our decision it might have waited to finally pass the bills until nearer the end of the session. Moreover, the Legislature committed to this Court to deliver the Budget Bills to the Governor by June 30, 2009. Because these bills contained appropriations, the Governor was not faced with the prospect of signing or vetoing each of them in toto. See Ariz. Const, art. 5, § 7. Instead, she had the power — and could have announced her intent before the bills were presented — to *243 use her line-item veto authority to approve or reject particular parts of each bill. In these circumstances, granting the Governor’s requested order would have advanced the delivery of the Budget Bills by merely a week and unnecessarily involved the Court further in this dispute among the political branches.
V.
¶ 43 We conclude that the presentment of the Budget Bills did not occur within the time mandated by the Arizona Constitution, but under the unique circumstances presented, we decline to grant the relief the Governor requested.
CONCURRING: ANDREW D. HURWITZ, Vice Chief Justice, MICHAEL D. RYAN, Justice and RUTH V. MeGREGOR, Justice (Retired).

. At the 1910 Constitutional Convention, delegates offered various proposals suggesting language about presentment. As the concurrence notes. Proposition 6, Section 14 stated that bills "when finally passed” would be filed with the secretary of state, but this language was replaced by Substitute Proposition 6, which provided in Section 12 that such bills would be filed with the Governor. The Records of the Arizona Constitutional Convention of 1910, at 1047 (John S. Goff, ed. 1991) [hereinafter "Records”]. After further amendments, Section 12 of Substitute Proposition 6 became the basis for Article 4, Part 2, Section 12. Id. at 584, 799. The concurrence concludes that "[t]he amendment from transmission to the secretary of state to transmission to the Governor demonstrates that the language ‘when finally passed' simply means ‘after’ the bill's passage.” See ¶ 47, infra.
We interpret the history of Section 12 differently. That the provision initially contemplated transmittal to the secretary of state rather than the Governor suggests that the Framers viewed post-passage transmittal as a ministerial act. Nothing in the records of the Convention indicates that Section 12 was intended to give the legislature discretion to delay presentment to the Governor. Finally, Section 12 must be considered against the backdrop of the Framers' approval of Article 5, Section 7.
On the afternoon of November 30, 1910, the Convention approved Substitute Proposition 33, which concerned the executive branch and became the basis for Article 5. Records at 794, 1365. Section 7 of Substitute Proposition 33 provided that ‘‘[e]very bill passed by the legislature, before it becomes a law, shall be presented to the governor.” Id. at 1128. Later that day, the Convention again considered Substitute Proposition 6, and Mr. Winsor successfully moved to amend Section 12 to replace the language "sent to the governor” with the phrase "presented to the Governor for his approval or rejection.” Id. at 799.
The concurrence interprets Section 12 in a way that makes it redundant to Article 5, Section 7, which itself requires presentment after passage. Mr. Winsor, however, specifically stated that his proposed change to Section 12 had independent force: "This particular provision is for the disposition of the bill after it is passed, and there is no other provision covering this point anywhere in any proposition.” Records at 799.

. The Legislature also identifies two bills that were finally passed but not transmitted to the Governor. Senate Bill 1007 was passed during the second regular session of the Thirty-Eight Legislature. Journal of the House of Representatives, 38th Leg., 2d Reg. Sess. 1127 (1988). Although not transmitted to the Governor as Senate Bill 1007, the text of the bill, as amended, was subsumed within Senate Bill 1261, which was signed into law by the Governor on July 1, 1988. See 1988 Ariz. Sess. Laws, ch. 271, §§ 25, 26, 35, 44 (2d Reg.Sess.); S.B. 1007, 38th Leg., *242 2d Reg. Sess. (Ariz. 1988) (Senate engrossed version). House Bill 2408 passed during the first regular session of the Forty-Second Legislature. Journal of the House of Representatives, 42d Leg., 1st Reg. Sess. 695 (1995). The bill was held by the House after passage because the bill was identical to Senate Bill 1199, which was signed by the Governor on April 17, 1995. See id..; 1995 Ariz. Sess. Laws, ch. 136, § 1 (1st Reg.Sess.); H.B. 2408, 42d Leg., 1st Reg. Sess. (Ariz. 1995) (Senate engrossed version).