299 P.3d 182

Jayne **FRIEDMAN** and Richard Bail, Plaintiffs/Appellees,

v.

**CAVE CREEK UNIFIED SCHOOL DIS-TRICT NO. 93**; Debbi Burdick, in her official capacity as Superintendent for Cave Creek Unified School District; David Schaefer, Mark Warren, Susan Clancy, Casey Perkins, and Stephanie Reese, in their official capacities as members of Cave Creek Unified School District Governing Board; and Kathie Amabisca, in her official capacity as Director of Finance for Cave Creek Unified School District, Defendants/Appellants.

No. 1 CA–CV 11–0828.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 28, 2013.

Scharf–Norton Center for Constitutional Litigation at the Goldwater Institute by Clint Bolick, Carrie Ann Sitren, Christina Sandefur, Phoenix, Attorneys for Plaintiffs/Appellees.

Lewis & Roca LLP by Kimberly A. Demarchi, Lynne C. Adams, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

HOWE, Judge.

¶ 1 Cave Creek Unified School District No. 93 ("the District") and school district officials David Schaefer, Mark Warren, Susan Clancy, Casey Perkins, Stephanie Reese, and Kathie Amabisca appeal from the superior court's decision finding 2010 Ariz. Sess. Laws ch. 332 § 34 (2d Reg. Sess.) ("Section 34") unconstitutional. Section 34 authorizes a school district that has unspent proceeds from a bond issue that occurred nine or more years before the statute's enactment to spend those proceeds for purposes the original bond election had not authorized. Section 34 allows a district to change the bond issue's purpose only if the district's board votes to change the purpose by June 30, 2013. We affirm the trial court's ruling because Section 34 directly conflicts with Arizona Constitution Article 7, Section 13.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In November 2000, the District held a special election that included a $41.6 million

class B bond measure ("2000 bond measure"). Pursuant to Arizona Revised Statutes ("A.R.S.") section 15–491(H)(6) (West 2013),[1] the District mailed a publicity pamphlet to each voting household. The publicity pamphlet specifically described the purposes for which the funds would be spent: the construction of new school buildings, the purchase of buses, the improvement of school grounds, and the payment of other associated costs. Under A.R.S. § 15–491(J), school districts can use bond proceeds only for purposes listed in the publicity pamphlet, except that up to ten percent can be used for general capital expenses. The District voters approved the 2000 bond measure.

¶ 3 On July 29, 2010, House Bill ("HB") 2725, Section 34 became law. That section provides that § 15–491(J) does not bind school districts in specific circumstances:

Notwithstanding section 15–491, subsection J, Arizona Revised Statutes, when nine years or more have passed since an election that authorized a school district to issue bonds, the school district may choose to use the proceeds of any bonds authorized at that election for any necessary capital improvement, provided that the school district's governing board votes to authorize the proposed use of the bond proceeds prior to June 30, 2013.

¶ 4 The District reported in its 2010 Annual Report that it owed $17.9 million on the 2000 bond measure and held approximately $13 million in unspent proceeds. The District determined that the funds were no longer needed to construct new schools and in August 2010 authorized the remaining funds to be used to improve existing school facilities in projects not specified in the publicity pamphlet. Jayne Friedman and Richard Bail then sued the District for injunctive and declaratory relief, alleging that the approval of the 2000 bond measure created a contract between the District and the voters, and that Section 34—which authorized expenditure of the bond funds in a manner inconsistent with the purposes the voters originally approved—violated the prohibition against the impairment of contracts in the United States and Arizona Constitutions. They further alleged that Section 34 constituted a special law in violation of Article 4, Part 2, Section 19, of the Arizona Constitution.

¶ 5 Both parties moved for summary judgment. The court granted Friedman and Bail's motion and denied the District's motion. The court noted that A.R.S. § 15–1024(B)(1) mandates that unspent money shall be used to pay down the bond debt and that § 15–491(J) prohibits the use of proceeds for purposes other than the projects stated in the publicity pamphlet. The court found that Section 34 "essentially abrogates the voters' rights existing at the time of their bond vote, and by so doing, strikes a blow to the election process," in violation of the contract clauses of the United States and Arizona Constitutions. The court found that no significant legitimate public purpose justified the appropriation of unused funds. The court further found that Section 34 was an unconstitutional special law.

¶ 6 The court entered judgment accordingly and awarded attorneys' fees and costs to plaintiffs pursuant to the private-attorney general doctrine. The District timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1).

## DISCUSSION

■ ¶ 7 The District argues that the trial court erroneously granted summary judgment, claiming that Section 34 does not violate the contracts clauses because it does not create a contract, and if it does, it does not impair any reasonable expectation of Cave Creek voters and is justified by a legitimate public purpose. The District also argues that Section 34 is not a special law because the class that the statute creates is elastic, permitting entry and exit into the class.

¶ 8 We review de novo the court's grant of summary judgment and affirm if, viewing the facts in the light most favorable to the party against whom judgment was entered, no genuine issue of material fact exists and the

1. We cite to the current version of the applicable statutes because no revisions material to this decision have occurred.

moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, ¶ 9, 283 P.3d 45, 49 (App.2012). Statutes are presumed constitutional, *State v. Casey*, 205 Ariz. 359, 362, ¶ 11, 71 P.3d 351, 354 (2003), and the party challenging the statute has the burden of proving its unconstitutionality, *Lisa K. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 173, 177, ¶ 9, 281 P.3d 1041, 1045 (App.2012). We may affirm the ruling if it is correct on any ground. *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 138, ¶ 8, 263 P.3d 683, 687 (App.2011).

¶ 9 We agree that summary judgment was appropriate here because Section 34 conflicts with Article 7, Section 13 of the Arizona Constitution.[2] Article 7, Section 13 provides that "[q]uestions upon bond issues or special assessments shall be submitted to the vote of real property tax payers, who shall also in all respects be qualified electors of this state, and of the political subdivisions thereof affected by such question."[3] Its purpose is "to provide the electors of an affected district with a voice in accepting or rejecting a proposed expenditure which they ultimately may bear." *Tucson Transit Auth.*, 107 Ariz. at 248, 485 P.2d at 818.

¶ 10 Section 34 conflicts with this constitutional provision because it allows qualifying districts to change the purpose for which the bond proceeds may be used—a "question[ ] upon [a] bond issue"—without submitting the question to a district-wide vote. The purpose for which the district will use bond proceeds is an essential consideration in voting for or against a bond measure. Voters may agree to accept the financial obligation of a bond if the proceeds are to be used for one purpose, but reject the obligation if the proceeds are to be used for another purpose. The Legislature itself recognizes that a bond's purpose is an essential term in a bond measure by requiring that the purpose be listed in the bond election's publicity pamphlet, A.R.S. § 15–491(H)(6)(b), and then limiting the use of the bond proceeds to the purpose stated in the publicity pamphlet, § 15–491(J). The Legislature's 2011 amendment to section 15–491(J) providing that "[t]he proposed capital improvements may be changed by a subsequent election as provided by this section," 2011 Ariz. Sess. Laws, ch. 344, § 15 (1st Reg. Sess.), is further recognition that a bond's purpose cannot be changed without an election, as Article 7, Section 13 requires. Because Section 34 directly conflicts with the Arizona Constitution, it cannot stand.

¶ 11 The District nevertheless argues that the Legislature has discretion to change how bond funds can be used because Article 7, Section 13 does not expressly limit a district's use of bond proceeds to the purposes for which it was obtained. The District maintains that the limitations on the use of the proceeds are statutory, not constitutional, so the Legislature may remove the limit as freely as it imposed it.

¶ 12 This argument disregards the language of Article 7, Section 13. " 'The Constitution should be construed so as to ascertain and give effect to the intent and purpose of the framers and the people who adopted it.' " *Rumery v. Baier*, 231 Ariz. 275, 278, ¶ 15, 294 P.3d 113 (2013) (quoting *Brewer v. Burns*, 222 Ariz. 234, 239, ¶ 26, 213 P.3d 671, 676 (2009)). "We do so by fairly interpreting the

---

**2.** We decline to address whether Section 34 conflicts with the impairment of contract provisions of the United States and Arizona Constitutions. *See State Sch. Bldg. Fin. Comm. v. Betts*, 216 Cal.App.2d 685, 31 Cal.Rptr. 258, 263 (1963) ("It is not necessary to draw contractual analogies. The logical basis for invalidating such amendments is not that they violate a metaphorical contract; rather, that they clash with the constitutional provision which required popular approval of the bonds in the first place. . . ."). Because of our resolution, we need not address whether Section 34 also constitutes a special law in violation of Article 4, Part 2, Section 19 of the Arizona Constitution.

**3.** The United States Supreme Court held in *City of Phoenix v. Kolodziejski* that Article 7, Section 13 could not constitutionally limit the franchise in bond elections to tax payers of real property. 399 U.S. 204, 212, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). This holding does not otherwise affect Section 13's validity or our analysis. *Tucson Transit Auth., Inc. v. Nelson*, 107 Ariz. 246, 248, 485 P.2d 816, 818 (1970) (*Kolodziejski* did not affect Section 13's "prior electoral approval requirement.").

language used and, unless the context suggests otherwise, giving words 'their natural, obvious and ordinary meaning.'" *Id.* (quoting *Brewer*, 222 Ariz. at 239, ¶ 26, 213 P.3d at 676). Article 7, Section 13 requires submission of "questions upon bond issues" to the voters, and the "natural, obvious, and ordinary meaning" of that phrase includes a bond's precise terms—especially the bond's purpose—within the "question" that must be submitted to the voters.

¶ 13 This interpretation is also in keeping with the framers' intent for Article 7, Section 13. The framers intended that this provision guarantee that the voters of a district will decide whether to accept or reject the financial obligation of a bond, *Tucson Transit Auth.*, 107 Ariz. at 248, 485 P.2d at 818, and the question whether to accept or reject a bond measure necessarily includes accepting or rejecting the stated purpose of the bond. To hold otherwise—that a bond's purpose is not a part of the "question" that must go before the voters—makes this constitutional guarantee illusory. Under the District's interpretation, a school district could present a bond measure under stated purposes that voters would surely receive favorably, and then, once the election has concluded, change the purposes for which the bond proceeds may be spent to one the voters may not have received favorably had those purposes been presented to them. Such an interpretation would allow a school district to accomplish a purpose in direct violation of an essential condition upon which voter approval was obtained. *Cf. Peery v. City of Los Angeles*, 187 Cal. 753, 769, 203 P. 992 (1922) (holding that a city could not sell bonds below par value, effectively raising the interest rate, because that would change the terms of the bond measure that voters approved). Because Section 34 takes away the voters' right guaranteed by Article 7, Section 13 with respect to particular bond measures, Section 34 cannot stand.

## CONCLUSION

¶ 14 Section 34 is unconstitutional because it conflicts with Article 7, Section 13 of the Arizona Constitution. The superior court's ruling is affirmed.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PATRICIA A. OROZCO, Judge.