NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GREG MILLS, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA BOARD OF TECHNICAL REGISTRATION, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 20-0510
FILED 8-12-2021

Appeal from the Superior Court in Maricopa County
No. CV2019-013509
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

COUNSEL

Institute for Justice, Tempe
By Paul V. Avelar
*Co-Counsel for Plaintiffs/Appellants*

Institute for Justice, Arlington, Virginia
By Adam Griffin
*Co-Counsel for Plaintiffs/Appellants*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Gregory Y. Harris, John C. Gray, Daniel P. Thiel
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

¶1            Plaintiffs Greg Mills and Southwest Engineering Concepts, LLC (SEC) appeal from the dismissal of their claims for failure to exhaust administrative remedies and for lack of standing and ripeness. Because plaintiffs have shown no error, the dismissal is affirmed.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2            Mills has worked as an engineer for many years. For more than two decades, Mills was a manufacturing company employee, meaning he was not required to register as a "professional engineer" under Arizona law. *See* Ariz. Rev. Stat. (A.R.S.) § 32-101(B)(11)(2021).[2] In 2008, Mills started his own consulting firm, SEC, where he is the "Principal Engineer." That 2008 change required Mills and SEC to comply with Arizona law governing "engineering practice." *Id.*

¶3            Since at least 1935, the Arizona Board of Technical Registration has promulgated and enforced "standards of qualification" for engineers. A.R.S. §§ 32-101 to -113. The Board is authorized to investigate and act on alleged violations of those standards, including directing an administrative law judge to do so. *See* A.R.S. § 32-106(A). That administrative process includes: (1) considering whether a complaint presents reasonable cause of a violation over which the Board has jurisdiction; (2) assigning a staff member to investigate; (3) providing the respondent notice and an opportunity to respond and conducting

---

[1] This court accepts the well-pleaded facts alleged in the complaint as true. *Collins v. State*, 166 Ariz. 409, 411 (App. 1990). Plaintiffs ask this court to take judicial notice of minutes from a July 28, 2020 Board meeting. Noting the Board's opposition, the court grants the request for judicial notice. *See* Ariz. R. Evid. 201.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

interviews; (4) a technical assessment of the complaint and consideration of evidence by volunteer members of the Board's Enforcement Advisory Committee (EAC); (5) recommendations by the EAC to the Board; (6) if disciplinary action is indicated, the respondent is afforded the opportunity to resolve the matter informally; (7) if those informal efforts do not result in resolution, the respondent can elect to have a formal hearing; and (8) the Board then can take final agency action. *See* Ariz. Admin. Code. (A.A.C.) R4-30-120.

**¶4** If violations are found to warrant disciplinary action, the respondent can resolve the complaint informally through a "consent agreement." A.A.C. R4-30-120(G); A.R.S. § 32-128(G). The respondent also may have the complaint resolved at a formal hearing. Respondents are encouraged, but not required, to attend and participate in EAC and Board proceedings. A.A.C. R4-30-120(B)–(C). After a formal hearing, the Board can take various disciplinary actions, ranging from a letter of concern to revocation of certification or registration. *See* A.R.S. §§ 32-128(A), (B). Final Board action, taken after these many administrative steps, is subject to review in superior court pursuant to Arizona's Administrative Procedure Act. *See* A.R.S. § 32-128(J).

**¶5** Here, the Board received a complaint from one of plaintiffs' customers alleging both work-quality issues and that plaintiffs were not registered with the Board. In early May 2019, the Board notified plaintiffs of the complaint and indicated that the allegations potentially implicated statutory requirements. *See* A.R.S. §§ 32-141, -145(1)-(2). Plaintiffs' response was that they "have never done any work in any board regulated profession."

**¶6** In late June 2019, the Board wrote plaintiffs that a preliminary investigation was underway and provided the technical assessment results, including opinions that plaintiffs were violating three cited statutory requirements. In early August 2019, the Board sent plaintiffs a draft consent agreement, proposing to resolve the investigation for a $3,000 fine, $375 in costs and an order for plaintiffs to comply with the law. Plaintiffs did not agree to the consent agreement.

**¶7** The Board timely invited Miller to an October 2019 meeting to discuss the investigation, noting "attendance was not mandatory." Although plaintiffs elected not to attend, at that meeting, the Board voted to amend the consent agreement to increase the fine to $6,000. The Board provided plaintiffs the amended consent agreement the next day. Plaintiffs did not agree to the amended consent agreement.

**¶8**            As of December 2019, although the customer complaint remained pending, no formal Board hearing had been requested, scheduled or held; no formal Board action had been taken and no appealable final Board decision had issued. Rather than request formal review of the customer complaint by the Board, in December 2019, plaintiffs filed this case in superior court, challenging the constitutionality of various statutes as applied and requesting declaratory and other relief.

**¶9**            As relevant here, plaintiffs made four primary arguments: (1) Arizona statutes "violate [plaintiffs'] rights to truthfully say that [Mills] is an engineer and qualified to do the engineering he does, which is protected by the free speech provision, Article II, Section 6, of the Arizona Constitution;" (2) Arizona's definition of "engineering practice" is "void for vagueness, violating both the due process and separation of powers provisions, Article II, Section 4, Article III, and Article IV, of the Arizona Constitution;" (3) Arizona's definition of "engineering practice" cannot be applied without violating plaintiffs' economic liberty, due process and equal privileges or immunities rights, Article II, Sections 4 and 13, and Article IV, Part 2, Section 19(13), of the Arizona Constitution; and (4) the administrative process violates due process, separation of powers and nondelegation guarantees, Article II, Section 4, Article III, and Article VI, of the Arizona Constitution.

**¶10**            The Board moved to dismiss for lack of subject matter jurisdiction given plaintiffs' failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted due to lack of standing and ripeness. *See* Ariz. R. Civ. P. 12(b)(1), (6). After full briefing and oral argument, in May 2020, the superior court granted the motion "[f]or the reasons set forth in [the Board's] motion and reply."

**¶11**            At a late July 2020 Board meeting the Board unanimously rescinded its previous vote to send the matter to hearing. The Board also unanimously voted to attempt to find a mutual resolution. No further administrative action has been taken or scheduled.

**¶12**            The superior court entered final judgment in August 2020. This court has jurisdiction over plaintiffs' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶13　　　　Plaintiffs argue the superior court erred in dismissing their claims for failure to exhaust administrative remedies, lack of standing and ripeness. This court reviews de novo the grant of a motion to dismiss. *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 513 ¶ 11 (2021).

**I.　　Failure to Exhaust Administrative Remedies.**

¶14　　　　Under the doctrine of exhaustion of administrative remedies

> litigants may not seek "judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." The purpose of the doctrine is "to allow an administrative agency to perform functions within its special competence-to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." The doctrine promotes both judicial economy and administrative agency autonomy by preventing premature judicial intervention in inchoate administrative proceedings.

*Moulton v. Napolitano*, 205 Ariz. 506, 511 ¶ 9 (App. 2003) (citations omitted). This doctrine "is jurisdictional. [I]f parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures. If they fail to utilize all their administrative remedies, the superior court lacks jurisdiction to consider their claim." *Id.* (citations omitted). As a result, the superior court lacks jurisdiction over a dispute when a statute provides for an administrative hearing process and specifies the scope and manner of judicial review for challenges to final agency action. *Hamilton v. State*, 186 Ariz. 590, 593 (App. 1996) (citing cases). Plaintiffs have the burden of establishing jurisdiction. *Moulton*, 205 Ariz. at 511 ¶ 8.

¶15　　　　Only final Board decisions are subject to judicial review. *See* A.R.S. § 32-128(J). Here, there was no formal hearing by the Board, let alone a final Board decision. Moreover, by the time plaintiffs had filed this appeal, the Board had rescinded its decision to send the matter to a formal hearing. There is no question that plaintiffs have not exhausted their administrative remedies.

¶16        Plaintiffs argue they did not need to exhaust administrative remedies because they:

> (1) do not challenge administrative action, (2) [exhaustion is futile because plaintiffs] make only constitutional-rights claims that cannot be redressed by the Board and are *not* "inextricably intertwined" with any requests for government benefits, (3) their suit presents only private rights for judicial consideration, which the Board cannot adjudicate, (4) it would cause irreparable harm to force [plaintiffs] through the very administrative process they are challenging, and (5) this case is a jurisdictional challenge to the Board's power to adjudicate [plaintiffs'] constitutional rights."

¶17        In making these arguments, the cases on which Plaintiffs rely either hold against them or are distinguishable. Plaintiffs rely on dicta from several cases holding administrative exhaustion *was required*. *See Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 223-24 (1979) (affirming dismissal of arguments made for the first time in superior court, because none of the "exceptional circumstances" excusing exhaustion of administrative remedies applied; exhaustion "is firmly entrenched in Arizona, for such sound reasons as judicial economy and reliance on the expertise of the administrative body for initial adjudication"); *Canyon del Rio Invs., L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 338 ¶ 1 (App. 2011) (holding limitation periods for damage and declaratory judgment claims do not begin to run "until administrative remedies have been exhausted" and "an as-applied challenge to a zoning decision must be predicated on a final decision by the relevant government body"); *Estate of Bohn v. Waddell*, 174 Ariz. 239, 251 (App. 1992) ("None of the taxpayers exhausted available administrative remedies. No recognized exception to the exhaustion rule excused their failure to follow the administrative refund procedure. Therefore, the tax court did not have subject matter jurisdiction."). These holdings are contrary to plaintiffs' arguments that exhaustion is not required here.

¶18        Other cases on which plaintiffs rely are distinguishable as they address issues that are inapplicable here. *See Coconino Cnty. v. Antco, Inc.*, 214 Ariz. 82, 86–87 ¶¶ 11–12 (App. 2006) ("the exhaustion of [administrative] remedies doctrine is clearly inapplicable" where "[n]o administrative action was pending . . . at the time the trial court dismissed [the] complaint" and a "delegation agreement . . . specifically

acknowledged [plaintiff']s statutory right to" file the complaint); *Zeigler v. Kirschner*, 162 Ariz. 77, 83, 85–86 (App. 1989) (finding class action claims under 42 U.S.C. § 1983 "in the instant case were not subject to dismissal because of the named plaintiffs' failure to exhaust their state administrative remedies;" "[t]he basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence, including making a factual record, applying its expertise, and correcting its own errors so as to lessen the need for judicial resolution" and remanding for an evidentiary hearing to determine "whether either the futility or irreparable harm exceptions should preclude application of the exhaustion doctrine"); *Farmers Inv. Co. v. Ariz. State Land Dep't*, 136 Ariz. 369, 370, 374 (App. 1982) (in affirming finding that public auction of groundwater "from state land was void because the [Arizona State Land] Department could not impose" a reimbursement condition, rejecting administrative exhaustion argument because "[t]he administrative process had indeed run its course so as to allow judicial intervention"); *Manning v. Reilly*, 2 Ariz. App. 310, 312 (1965) (finding facial challenges to city zoning ordinance "require judicial determination and are beyond the scope of" the city's administrative "powers and authority. If the subject ordinance is void, the appellees should not be compelled to inferentially admit its binding force and effect by seeking administrative relief"). These cases are distinguishable for various reasons. Among other things, the Board action in this case was pending and had not been resolved during the entirety of the superior court action, this is not a class action and plaintiffs are not facially challenging applicable statutes (instead, challenging them as applied). Accordingly, these cases do not support plaintiffs' arguments on appeal. With this preface, however, the court addresses plaintiffs' various arguments in turn.

### A.      Plaintiffs Are Challenging Administrative Action.

¶19      Plaintiffs argue exhaustion is not required because they "do not challenge final agency action," adding that "there has been no final administrative action here." That argument, however, ignores the statutory limitation that only final Board action can be challenged in court. *See* A.R.S. § 32-128(J). Indeed, as noted above, the jurisdictional exhaustion requirement prevents precisely the type of interlocutory challenge plaintiffs are attempting to make here to circumvent the administrative process. *See Estate of Bohn*, 174 Ariz. at 245–46; *see also Moulton*, 205 Ariz. at 511 ¶ 9 (citing authority).

¶20 Plaintiffs argue they are not challenging administrative action because they are seeking to have their constitutional rights declared and protected, are seeking to have certain statutes declared unconstitutional as applied and assert the Board lacks the authority to decide those issues. But plaintiffs *do* challenge administrative action by asserting that the very statutes under which the Board is proceeding "are unconstitutional as applied." There are also unresolved factual disputes about whether plaintiffs are violating legal obligations, and given plaintiffs' failure to exhaust, the factual record is far from complete. Resolution of those factual disputes (which turns on evidence not yet presented in the administrative process) is a prerequisite to resolving whether the statutes even apply to plaintiffs. *Tanner Cos. v. Ariz. State Land Dep't*, 142 Ariz. 183, 187–88 (App. 1984) ("An action for declaratory relief is not appropriate to review an administrative decision when there exists a procedure to appeal from the administrative ruling. Furthermore, the declaratory judgment procedure may not be used to preempt or prejudge issues that are committed for initial decision to an administrative body.").

¶21 Plaintiffs also argue that A.R.S. § 32-101(B)(11), which defines "engineering practice," is void for vagueness. That claim, however, is barred by Arizona Supreme Court precedent. Although conceding that the Board's authorizing act "could be better drawn and its meaning thereby made clearer," that court rejected such a challenge more than 50 years ago, concluding that "the rights, duties and privileges of registrants and the Board are sufficiently defined." *State Bd. of Tech. Registration v. McDaniel*, 84 Ariz. 223, 236 (1958). That precedent is binding here. *See Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 145 ¶ 13 (App. 2009). In short, and contrary to their argument, plaintiffs are challenging administrative action, which negates their first ground for asserting that exhaustion is not required.

## B. Futility Does Not Excuse Exhaustion.

¶22 Plaintiffs argue that administrative exhaustion would be futile because they seek a judicial declaration that various statutory provisions are unconstitutional as applied, and the Board cannot enforce unconstitutional statutes. "When alleged constitutional violations are inextricably intertwined with government benefits for which administrative remedies exist, the consistent trend in federal and state courts is to uphold the requirement of an exhaustion of remedies." *Moulton*, 205 Ariz. at 512 ¶ 16 (quotations omitted). Plaintiffs argue that their claims are not "inextricably intertwined" with government benefits because they do not seek a government benefit and thus are not required to exhaust their remedies. But the presence or absence of a government benefit is not the

lynchpin for whether exhaustion applies. *See, e.g.*, *Valley Vendors Corp. v. City of Phoenix*, 126 Ariz. 491 (App. 1980).

**¶23**        Contrary to plaintiffs' position, "even where '[a]n agency has no particular expertise to decide on the constitutionality of its own enabling act and will not ordinarily rule on the issue in any event,' exhaustion of remedies has still been required." *See Estate of Bohn*, 174 Ariz. at 250 (citing cases) (noting the benefit of a fully developed record so courts "will not have to decide 'important and difficult' questions of constitutional law in the absence of a factual background"). As the Board notes, where the agency can consider at least some constitutional arguments and grant some form of relief to remedy alleged harms, and the Legislature has assigned some factual inquiry to the agency, exhaustion generally is required. Building on *Estate of Bohn*, this court has stated that "exhaustion of administrative remedies is of particular importance when the case raises constitutional issues. The administrative agency may decide in favor of the aggrieved party on other grounds, thus mooting the constitutional issue and relieving the courts of the need to decide it." *Third & Catalina Assocs. v. City of Phoenix*, 182 Ariz. 203, 207 (App. 1994); *accord Canyon del Rio Invs., L.L.C.*, 227 Ariz. at 343 ¶ 28. For these reasons, the court rejects plaintiff's futility argument.

### C.        Plaintiffs' "Public Rights"/"Private Rights" Argument Does Not Excuse the Exhaustion Requirement.

**¶24**        Plaintiffs argue exhaustion would be futile because at least some of their claims implicate "'private rights' that can only be determined by courts, as opposed to 'public rights,' such as government benefits, that can be determined by executive agencies." Plaintiffs cite no authority suggesting that such a distinction is binding under Arizona law. Indeed, plaintiffs concede that the United States Supreme Court has neither "definitively explained" nor been "entirely consistent" in using such a distinction. And the law review articles and dissents plaintiffs cite are not binding.

**¶25**        The Board correctly notes that, under Arizona law, administrative agencies offer an appropriate forum for adjudicating various types of claims, including those involving "public rights" and "private rights." *See Batty v. Ariz. State Dental Bd.*, 57 Ariz. 239, 247 (1941) (citation omitted) (noting the "'power to hear and determine matters more or less affecting public and private rights may be conferred upon and exercised by administrative and executive officers without offending constitutional provisions relating to the judicial power vested in the

courts'"). "[A]dministrative action cannot be deemed futile if the agency has the power to provide some relief." *Moulton*, 205 Ariz. at 514 ¶ 24. Here, the Board clearly has the power to provide some relief (if not complete relief), the availability of which negates plaintiffs' futility assertion.

### D.     Plaintiffs' Assertions of Irreparable Harm Arising Out of Administrative Fact Finding Do Not Excuse Exhaustion.

¶26     Plaintiffs note that the administrative process involves an executive agency first adjudicating their rights and that any final Board decision "can be judicially reviewed *only* in an 'administrative appeal' as provided by" A.R.S. § 12-902(B), further asserting that "in this judicial review, the courts are required to be biased in favor of the Board's fact-finding." This administrative process, plaintiffs argue, should not be applied here because it "is the exact process that Plaintiffs argue violates their constitutional rights to due process and the separation of powers, the injury they are suing to prevent." Not so.

¶27     First, contrary to plaintiffs' claims, the superior court must defer *only* to the Board's findings that are "supported by substantial evidence." *Gaveck v. Ariz. State. Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436 ¶ 11 (App. 2009). Moreover, if the Board's "'actions do not satisfy the aggrieved party, then [the party] may seek redress in the court system. The plaintiff may not choose its administrative remedy through the framing of its own complaint. If that were possible, the purpose of the exhaustion doctrine would be thwarted.'" *Moulton*, 205 Ariz. at 514 ¶ 21 (citation omitted). Similarly, the Board can determine whether plaintiffs complied with the statutory requirements and also has the power to provide relief, also showing that exhaustion is both required and appropriate. *Id.* at 514 ¶¶ 23–24 (citing cases). Moreover, this is not -- as plaintiffs suggest -- a case in which exhaustion is not required because the Board "has predetermined a decision in the matter." In sum, plaintiffs can seek judicial review after they exhaust the Board's administrative process. *See* A.R.S. § 32-128(J).

¶28     The authority plaintiffs cite does not support their argument that administrative exhaustion is not required given a threat of irreparable harm. In *Zeigler*, the primary case relied on by plaintiffs, the court addressed a class action against the Arizona Health Care Cost Containment System seeking declarations that past eligibility and claims practices for services to be provided to Medically Indigent/Medically Needy individuals were illegal and seeking injunctive relief preventing those practices in the future. 162 Ariz. at 81. Given the claims for "classwide declaratory and injunctive relief," *Zeigler* stated that the court could not

> properly conclude as a matter of law on the bare allegations of the complaint that pursuit and exhaustion of the named plaintiffs' administrative remedies would have had realistic potential as a means for seeking to induce the director to abandon or alter the allegedly illegal documentation and verification requirements affecting the putative class, or that enforcement of the exhaustion doctrine would not result in irreparable harm to members of the class.

*Id.* at 86. This case, by contrast, is not a class action, plaintiffs' challenges are as applied (not facial) and plaintiffs are not being denied essential services.[3] For these reasons, plaintiffs' claims do not obviate exhaustion.

### E.  Plaintiffs' Assertions Regarding the Board's Jurisdiction Do Not Excuse Exhaustion.

**¶29**        Plaintiffs argue that exhaustion does not apply "because this case both challenges the jurisdiction of the Board to act and the Board does not have 'expertise' to exercise in the administrative process." Citing *Collins v. State*, plaintiffs argue that "[a]n allegation relating to the competency of [an agency] to impose sanctions on [a plaintiff] . . . is jurisdictional" and is not subject to exhaustion. *See Collins*, 166 Ariz. at 413. But *Collins* is distinguishable.

**¶30**        *Collins* addressed a complaint asking that an administrative "order be set aside." 166 Ariz. at 412. Here, by contrast, no final Board decision has issued and the Board has taken no final action that plaintiffs challenge. Simply put, plaintiffs are incorrect in claiming that *Collins* means "a litigant may turn to a court at any time to challenge an agency's legal ability to impose penalties." *Collins* also involved the application of A.R.S. § 12-902(B), which provides that an agency decision that becomes final given the failure to timely object or respond "shall not be subject to judicial review under the provisions of this article *except for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter*." *Collins*, 166 Ariz. at 412 (citing A.R.S. § 12-902(B)). Here, by contrast, the

---

[3] The other authority cited by plaintiffs -– a three Justice plurality in *Elrod v. Burns* –- is not binding and did not discuss exhaustion, addressing instead whether plaintiffs had an adequate remedy at law in given a request for a preliminary injunction. 427 U.S. 347, 373 (1976).

Board has not yet begun formal proceedings, let alone issued a final agency decision. Finally, plaintiffs' complaint sought declaratory relief based on various constitutional theories, but did not press a claim that the Board lacked jurisdiction over plaintiffs. In sum, plaintiffs have not shown the superior court erred in dismissing their complaint for failure to exhaust administrative remedies.

## II.     Lack of Standing and Ripeness.

**¶31**          "While the Declaratory Judgments Act is remedial and should be liberally construed, A.R.S. § 12–1842, 'the complaint must set forth sufficient facts to establish that there is a justiciable controversy.'" *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 468 ¶ 29 (App. 2007) (quoting *Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz. App. 308, 310 (1972)). "[A] justiciable controversy exists if there is an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45 ¶ 10 (App. 2000) (quotation omitted). In Arizona courts, standing and ripeness are prudential doctrines applied "as a matter of sound judicial policy." *Bennett v. Napolitano*, 206 Ariz. 520, 524 ¶ 16 (2003).

**¶32**          Among other things, standing and ripeness prevent courts "from rendering a premature decision on an issue that may never arise." *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 280 ¶ 36 (2019). As applied in this case, a factual dispute remains about whether plaintiffs were practicing, offering to practice or by implication purporting to be qualified to practice any Board regulated profession or obligation, in violation of applicable regulatory law. Without any administrative hearing (let alone, final administrative action), this is not a case where the record is "sufficiently developed" to allow the parties to brief "in detail, the legal claims and arguments based on" concrete facts of record. *See id.* at 280 ¶ 37; *see also Marks*, 17 Ariz. App. at 309-10 ("A 'justiciable controversy' arises where adverse claims are asserted upon present existing facts, which have ripened for judicial determination;" addressing a post-trial special action in a case involving no administrative proceedings and concluding that a declaratory action challenging statutory restrictions on abortion was "a justiciable controversy;" rejecting argument that "'the *complaint* does not state a justiciable controversy because the plaintiffs do not allege that they are being" criminally prosecuted or threatened with criminal prosecution").

**¶33** Should any such formal investigation ever proceed, depending on the facts presented, the Board might rule in plaintiffs' favor. Such a finding would obviate any final agency decision adverse to plaintiffs. Moreover, even if the Board ruled against plaintiffs, they could then pursue a superior court challenge. Factually, of course, the Board is in the better position to address that inquiry in the first instance. *See, e.g.*, *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 444-45 ¶ 26 (App. 2001). Thus, plaintiffs' claims are not yet ripe and may never become so. For similar reasons, plaintiffs have not shown that the superior court erred in concluding they lacked standing. *See Brewer v. Burns*, 222 Ariz. 234, 237 ¶ 12 (2009) (Standing requires a party to "allege a particularized injury that would be remedial by judicial decision.").[4]

**CONCLUSION**

**¶34** The dismissal is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4] Other standing cases cited by plaintiffs are distinguishable. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 210 ¶¶ 9, 11–12 (2019) (in special action proceeding, concluding A.R.S. § 40-285(A) did not give the Arizona Corporation Commission power over City's exercise of eminent domain, meaning the Commission acted without jurisdiction to enter an order, meaning the order issued "constitutes an injury to the City" and the City had standing); *Ariz. Indep. Redistricting Comm'n v. Brewer*, 229 Ariz. 347, 351 ¶ 15 (2012) (noting that one plaintiff "unquestionably has standing . . . Therefore, we need not decide whether [another plaintiff] also has standing"); *Estate of Stewart*, 230 Ariz. 480, 483–84 ¶¶ 8–12 (App. 2012) (concluding decedent's son had standing to challenge decedent's will and trust disinheriting son and that dispute was ripe).